**CHRISTOPHER M., by Next Friend LAVETA McA., Plaintiff–Appellant,**

v.

**CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT and Mary Grett Memorial School, Defendants–Appellees.**

No. 90–2637.

United States Court of Appeals, Fifth Circuit.

June 25, 1991.

Christopher L. Jonas, Corpus Christi, Tex., for plaintiff-appellant.

Mark S. Partin, Advocacy, Inc., Austin, Tex., for amicus curiae—Advocacy, Inc.

Shirley Selz, Quentella K. Garza, L. Timothy Perrin, Gary, Thomasson, Hall & Marks, Corpus Christi, Tex., for defendants-appellees.

Before RUBIN, KING, and JONES, Circuit Judges:

ALVIN B. RUBIN,* Circuit Judge:

A multi-handicapped child appeals the district court's ruling that the local education authority provided him the "free appropriate public education" required under the Education of the Handicapped Act (EHA).[1] We find that the district court applied the correct legal standard in evaluating whether the child's education program was appropriate, the child was not presumptively entitled to receive a full school day of programming, and the court was not required to give greater weight to the testimony of the child's physician than to the testimony of the child's school therapists and teachers. We therefore affirm the holding of the district court.

## I.

Christopher M. is a profoundly mentally and physically-handicapped child. Although he is 11 years old, his IQ is 5 and his functional development approximates that of an infant between 2–6 months. Both his neurological capabilities and negative physical responses to prolonged stimulation limit his ability to receive educational programming, which consists of basic sensory stimulation. His responses to stimulation include hyperextension, sweating, turning blue, breathing distress, and extreme fatigue. He therefore requires frequent intervals of rest between periods of instruction or activity.

Christopher has been enrolled at the Mary Grett Memorial School for the Multi-Handicapped, under the aegis of the Corpus Christi Independent School District (CCISD), since 1980. His educational program consisted of a full school day until 1984, when he underwent surgery to implant a gastric tube; upon his return, his school day was reduced to four hours. In its education program for 1987, the school proposed a reduction in Christopher's school day to two hours, prompting his grandmother to initiate administrative proceedings, in which she claimed that the free appropriate public education mandated by EHA entitled Christopher to a full school day of seven hours. During the pendency of legal proceedings, Christopher's 1986 education program, calling for a four-hour school day, has remained in effect in accordance with EHA.[2] The hearing officer concluded that given Christopher's physical difficulties and limited ability to process sensory input, a four-hour school day constituted an appropriate education. CCISD has complied with this ruling.

In February 1988, Christopher filed a complaint against CCISD in the district court on the same grounds. The district court affirmed the ruling of the hearing officer.

## II.

EHA mandates that in return for its acceptance of federal funding the State must provide all handicapped children a "free appropriate public education".[3] The curriculum is tailored to the unique needs of each child through an "individualized education program" (IEP),[4] which is devised by the child's parents or guardian, teacher, and a representative of the local educational agency[5] and reviewed at least annually.[6] EHA imposes extensive procedural requirements upon the State to assure that its goal of individualized instruc-

* Judge Rubin authored this opinion prior to his death on June 11, 1991.

1. 20 U.S.C. §§ 1400 et seq. (1988).

2. Id. at § 1415(e)(3).

3. Id. at § 1412(1).

4. Id. at § 1401(18).

5. Id. at § 1401(19).

6. Id. at § 1414(a)(5).

tion for each handicapped child is met.[7] The only substantive standard for an "appropriate" educational program established by EHA and the Supreme Court, however, is that a free appropriate public education must consist of "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction."[8] The requirement of an appropriate education is met if the State provides "personalized instruction with sufficient support services to permit the child to benefit educationally."[9] While that benefit must be "meaningful,"[10] EHA does not require that the State attempt to maximize each child's potential.[11]

■ This court has never explicitly delineated the standard to be applied by an appellate court in reviewing a district court's decision that the IEP for a particular child fulfills the requirements of an appropriate education. We now join the Sixth,[12] Seventh,[13] and Ninth[14] Circuits in subjecting this issue to *de novo* review as a mixed question of fact and law. Independent review of the appropriateness of an IEP comports with one purpose of the Act: providing procedural protections for handicapped children's rights. The district court's findings of underlying fact, however—such as the lack of benefit or potential harm to Christopher resulting from a longer school day—remain subject to the clearly erroneous standard.[15]

■ Christopher argues that the district court erred in considering the severity of his handicap and the extent to which he could benefit from education in determining whether the four-hour school day envisioned in his IEP would fulfill the requirement of appropriate education. He contends that EHA mandates that all children, regardless of the severity of their handicap, receive a free appropriate public education;[16] that EHA specifically eliminated school officials' discretion to exclude children considered unable to benefit from education;[17] that access to special education is not contingent on the expectation that such education will produce any specific outcome;[18] and that a child therefore need not demonstrate ability to benefit to be entitled to a full educational program.[19] According to Christopher, an appropriate educational program is simply one that meets his individualized needs; since he needs time for frequent rest periods, EHA mandates a longer school day.

Christopher's argument, however, confuses the standard to be applied in determining *access* to education with that required in designing the *content* of the educational program. He relies predominantly

7. *Board of Educ. v. Rowley,* 458 U.S. 176, 189, 102 S.Ct. 3034, 3042, 73 L.Ed.2d 690 (1982).

8. *Id.* at 188–89, 102 S.Ct. at 3042; 20 U.S.C. at § 1401(16–18).

9. *Id.* at 203, 102 S.Ct. at 3049.

10. *Roland M. v. Concord School Comm.,* 910 F.2d 983, 991 (1st Cir.1990), *cert. denied* — U.S. —, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991); *Polk v. Central Susquehanna Intermediate Unit 16,* 853 F.2d 171, 180–82 (3rd Cir.1988), *cert. denied* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

11. *Rowley,* 458 U.S. at 199, 102 S.Ct. at 3047.

12. *Doe v. Defendant I,* 898 F.2d 1186, 1190 (6th Cir.1990).

13. *Lachman v. Illinois State Bd. of Educ.,* 852 F.2d 290, 293 (7th Cir.), *cert. denied* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988).

14. *Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1310 (9th Cir.1987).

15. *See Doe v. Alabama State Dept. of Educ.,* 915 F.2d 651, 666 (11th Cir.1990).

16. *Rowley,* 458 U.S. at 201 n. 23, 102 S.Ct. at 3048 n. 23.

17. *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988); *Kruelle v. New Castle County School Dist.,* 642 F.2d 687, 695 (3rd Cir.1981).

18. *Timothy W. v. Rochester, School Dist.,* 875 F.2d 954, 966 (1st Cir.), *cert. denied* — U.S. —, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989).

19. *Id.* at 960.

on *Timothy W. v. Rochester School Dist.*,[20] a First Circuit case in which the school district denied a severely handicapped child access to any public education, contending that EHA did not cover children who could not possibly derive any educational benefit from special services. The First Circuit held that demonstration of benefit was not a prerequisite to eligibility for education under EHA.[21] It observed:

> "*Rowley* focused on the *level* of services and the quality of programs that a *state* must provide, not the criteria for *access* to those programs. [Cite omitted] The Court's use of "benefit" in *Rowley* was a substantive limitation placed on the state's choice of an educational program; it was not a license for the state to exclude certain handicapped children."[22]

Since Christopher has never been denied access to special education by CCISD, his reliance on *Timothy W.* is misplaced.

The irrelevance of benefit in determining access to education, however, does not negate its pertinence in designing an individual educational program once access is assured. Christopher's contention that his IEP should be formulated without regard to the benefit, if any, he would derive or the severity of his handicap contradicts the very mandate of EHA to create an educational program tailored to the unique needs of each child. The drafters of EHA were guided by the principle that "each child must receive access to a free public program of education and training *appropriate to his learning capabilities.*"[23] *Rowley* imposes an obligation on the states that the IEP must be "reasonably calculated to enable the child to receive educational benefits."[24] Christopher himself stresses

that CCISD is required to provide him with a program that confers meaningful benefits.[25] CCISD simply could not do so without considering Christopher's abilities, handicaps, and the benefits he would derive.

In reviewing the appropriateness of an IEP, this court has previously considered these very factors: "our analysis is an individualized, fact-specific inquiry that requires us to examine carefully the nature and severity of the child's handicapping condition, his needs and abilities, and the school's response to the child's needs."[26] We have balanced the benefits and detriments to the child of a given program to determine whether the IEP is appropriate.[27] The Sixth Circuit, in a case similar to Christopher's, recently found one hour of home instruction per day, rather than a full school day at a special education program, to constitute an appropriate education because the child could tolerate only limited amounts of sensory stimulation.[28] In balancing Christopher's minimal ability to benefit from more than a four-hour school day against his physical distress resulting from prolonged sensory stimulation and determining that a four-hour school day was appropriate, the district court applied the correct legal standard.

### III.

Christopher contends that the limitation of his school day to four hours in his IEP is presumptively inappropriate. We have previously held—as have the majority of federal courts that have considered the issue[29]—that EHA "creates a

**20.** *Id.* at 954.

**21.** *Id.* at 960.

**22.** *Timothy W.*, 875 F.2d at 971.

**23.** *Rowley*, 458 U.S. at 193–94 & n. 15, 102 S.Ct. at 3044 & n. 15.

**24.** *Id.*, at 207, 102 S.Ct. at 3051; *accord Crawford v. Pittman*, 708 F.2d 1028, 1035 (5th Cir. 1983).

**25.** *Roland M.*, 910 F.2d at 991; *Polk*, 853 F.2d at 180–82.

**26.** *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir.1989).

**27.** *Id.* at 1051.

**28.** *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 621–22, 627 (6th Cir.1990).

**29.** *E.g. McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C.Cir.1985); *Doe v. Brookline School Comm.*, 722 F.2d 910, 919 (1st Cir.1983); *see* Comment, A School Board Bears the Burden of Proving that the Education of a Handicapped Child is "Appropriate" under the Education for All

presumption in favor of the education placement established by [a child's] IEP, and the party attacking its terms should bear the burden of showing why the educational setting established by the IEP is not appropriate." [30] Christopher therefore bears the burden of demonstrating that the four-hour school day envisioned in his IEP would not provide him any meaningful benefit. He has not done so. He has stated that longer programming might increase the benefit he receives. CCISD, however, is not obligated under EHA to supply Christopher with the maximum benefit possible, but only to provide a meaningful education.

■ Christopher claims, however, that federal and state law embody the presumption that a student will receive a full day of schooling unless CCISD proves that this schedule will physically endanger the child. He therefore argues that his burden was merely to demonstrate that limiting his school day to four hours was unnecessary. While Texas law adopts the presumption that all students will attend school for seven hours each day,[31] state law also recognizes that educational services may be modified for handicapped children,[32] whose "regular school day" will be defined by the terms of their IEP; the general practice of providing a seven-hour school day to non-handicapped students therefore does not apply to a handicapped child whose Admission, Review, and Dismissal Committee has found a shorter school day to be appropriate.[33]

■ Moreover, to presume that every child's school day should be of uniform length is at odds with the conception of individually tailored education embodied in EHA. The Act's presumption in favor of "mainstreaming" handicapped children whenever possible does not imply any presumption in favor of the generally-administered length of programming. Certainly a state cannot restrict its consideration of handicapped children's needs for lengthened periods of instruction by presuming that a "normal" schedule is adequate.[34] No other courts have applied a presumption that a full school day is required under EHA. The Ninth Circuit has stated that an abbreviated school day might be valid under EHA if contemplated by the IEP and tied to proper educational goals.[35] Both the Sixth and Seventh Circuits have found that a shortened school day may be warranted if the harm from longer programming outweighs the benefit the child might receive.[36] We now join those courts in declining to impose a presumption in favor of a full school day under EHA.

## IV.

Lastly, Christopher contends that the district court erred in crediting the school personnel's testimony over that of Christopher's pediatrician. Christopher's pediatrician, diagnostician, and grandmother all

Handicapped Children Act of 1975, 22 Rutgers L.J. 273, 279–80 (1990); *contra Grymes v. Madden,* 672 F.2d 321, 322 (3rd Cir.1982).

30. *Alamo Heights Indep. School Dist. v. State Bd. of Educ.,* 790 F.2d 1153, 1158 (5th Cir.1986), *quoting Tatro v. Texas,* 703 F.2d 823, 830 (5th Cir.1983), *aff'd in part, rev'd in part on other grounds* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984); *accord Doe v. Defendant I,* 898 F.2d at 1191.

31. Tex. Educ.Code Ann. § 21.004 (Vernon's Supp.1990); 19 Tex.Admin.Code § 61.161(b) (1988).

32. Tex. Educ.Code Ann. § 21.501 (Vernon's Supp.1990).

33. 19 Tex.Admin.Code §§ 89.235(d) & 89.242(b) (1988).

34. *Crawford,* 708 F.2d at 1035; *Georgia Ass'n of Retarded Citizens v. McDaniel,* 716 F.2d 1565, 1575 (11th Cir.1983), *vacated on other grounds* 468 U.S. 1213, 104 S.Ct. 3581, 82 L.Ed.2d 880, *reinstated in relevant part* 740 F.2d 902 (1984); *Battle v. Pennsylvania,* 629 F.2d 269, 280 (3rd Cir.1980), *cert. denied,* 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); *Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 980 (4th Cir. 1990); *Abrahamson v. Hershman,* 701 F.2d 223, 227 (1st Cir.1983).

35. *Doe v. Maher,* 793 F.2d 1470, 1491 (9th Cir. 1986), *mod. in part* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

36. *Thomas,* 918 F.2d at 622, 627; *Timms v. Metro. School Dist.,* 722 F.2d 1310, 1312 (7th Cir.1983).

testified that he could physically withstand a seven-hour school day and would benefit from increased programming. His grandmother and pediatrician also testified that he had made better progress with a longer school day in the past, but little or no progress with a four-hour school day. On the other hand, Christopher's teacher for the past two years, his school principal, psychologist, nurse, occupational therapist, and physical therapist all testified that any benefit Christopher received from more than two hours of programming per day—interspersed with rest periods totalling two hours—would be negligible and that Christopher suffered extreme distress and fatigue from increased programming. The hearing officer and the district court both found CCISD's witnesses to be more persuasive, since their assessments were based on daily and continuing observation within the classroom environment. Christopher's physician, by contrast, saw him only infrequently and for short periods of time, nor did he regularly observe the actual effects of the educational program on Christopher. Nor were Christopher's witnesses able to identify any educational objectives that would be met by additional programming, beyond the general assertion that more would be better.

 Christopher insists that his medical doctor's evaluation should be presumptively valid. While Christopher's pediatrician may have known him a great deal longer than his teachers and therapists, he has, however, at most observed him in a school environment only once for a short period of time. School personnel often have greater contact with a handicapped child than does a treating physician. We therefore decline to create any presumption in favor of the testimony of the child's treating physician. The district court is certainly capable of assessing the individual circumstances of each case and evaluating the credibility of both medical and nonmedical witnesses. In this case, the district court found the testimony of school personnel who had not only repeatedly ob-

served Christopher's reactions to sensory stimulation programming but also demonstrated obvious concern and affection for their student to be persuasive. The school's contention that Christopher's physical condition is extremely fragile is also bolstered by evidence that during the school terms 1987–89, Christopher was absent 21%–35% of school days. The district court's conclusion that a full school day of programming would be detrimental to Christopher is amply supported by the record.

## V.

 Advocacy, Inc., an organization devoted to representing the disabled, has filed a brief as amicus curiae in support of Christopher, and raises two additional arguments on appeal. Advocacy asserts that CCISD violated the procedural requirements of EHA by failing to obtain current medical assessment data. During the course of this dispute, Christopher has never raised any claim of procedural violation of EHA. The district court specifically commented on the absence of a procedural claim at the supplemental hearing; Christopher neither objected nor appealed. Therefore, any claim of procedural violation raised now by Christopher himself would be barred. As amicus curiae, Advocacy cannot raise an issue raised by neither of the parties absent exceptional circumstances.[37] Since Advocacy has alleged no exceptional circumstances, we do not address its claim of procedural violation.

 Advocacy also contends that CCISD has violated § 504 of the Rehabilitation Act of 1973. This claim was not raised by Christopher in the administrative proceedings or in his pleadings to the district court. Christopher alluded to the Rehabilitation Act claim in his district court brief; CCISD has consistently objected to its inclusion. The district court specifically found that this claim was not presented to the court either by complaint or by trial by

---

**37.** *United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 60 n. 2, 101 S.Ct. 1559, 1562–63 n. 2, 67 L.Ed.2d 732 (1981); *General Engineering Corp.* *v. Virgin Islands Water & Power Auth.,* 805 F.2d 88, 92 n. 5 (3rd Cir.1986).

consent. Since Christopher has not appealed that decision to this court, this claim has been waived.[38] Absent exceptional circumstances, an issue waived by appellant cannot be raised by amicus curiae.[39] Any claim that CCISD violated the Rehabilitation Act is therefore not properly before this court.

For the foregoing reasons, the ruling of the district court is AFFIRMED.

**38.** *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1539 n. 14 (5th Cir.1984).

**39.** *Preservation Coalition, Inc. v. Pierce*, 667 F.2d 851, 861–62 (9th Cir.1982).