### NATCHEZ–ADAMS SCHOOL DISTRICT, Plaintiff,

v.

### Evan Michael SEARING, a Minor, by His Parents and Next Friends, Pamela S. Searing and Michael A. Searing, Defendants.

**Civil Action No. 5:94–cv–97BN.**

United States District Court, S.D. Mississippi, Jackson Division.

March 8, 1996.

**1030**

Bruce M. Kuehnle, Jr., Adams, Forman, Truly & Smith, Natchez, MS, for plaintiff.

John J. Bach, Mississippi Protection & Advocacy, Jackson, MS, for Michael A. Searing, Pamela S. Searing.

### OPINION AND ORDER [1]

BARBOUR, Chief Judge.

In this action, Plaintiff, a local public school district, seeks reversal of an adminis-

1. This action was originally before Judge David Bramlette, United States District Court for the Southern District of Mississippi, Western Division. By an Order of Recusal dated December 4, 1995, the case was reassigned to Chief Judge William H. Barbour, Jr., United States District Court for the Southern District of Mississippi, Jackson Division.

2. The IDEA was formerly the Education of the Handicapped Act, 84 Stat. 175, as amended, 20 U.S.C. § 1401 et. seq. (1976).

3. The term "free appropriate public education" is defined as:

trative hearing officer's conclusion that Defendant, a disabled student enrolled by his parents in a private school, is entitled to occupational therapy under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400—1485 (1990 & Supp.1995). This cause is before the Court pursuant to § 1415(e)(4)(A) of the IDEA on the Motion of the Plaintiff Natchez–Adams School District ("Natchez–Adams") to Overturn Administrative Hearing Decision. The Defendants, Evan Michael Searing ("Evan"), by his parents, Pamela S. and Michael A. Searing, have responded to the Motion and have filed a Cross–Motion for Summary Judgment to Affirm Administrative Hearing Decision. The Court, having considered the motions, the responses, supporting and opposing memoranda and the exhibits attached thereto in conjunction with the administrative record, rules that Plaintiff's Motion is not well taken and should be denied and that Defendants' Cross–-Motion is well taken and should be granted in part.

### I. *Background*

#### A. The IDEA

■ By enacting the IDEA,[2] Congress endeavored to provide federal money to assist state and local agencies in educating children with disabilities. *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982). As a condition of federal funding, the IDEA requires states to provide all disabled children with a "free appropriate public education"[3] which emphasizes special education and related services[4] designed to

[S]pecial education and related services that—
(A) have been provided at public expense, under public supervision and direction and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program. . . .
20 U.S.C. § 1401(a)(18).

4. The term "related services" is defined as:

[T]ransportation, and such developmental, corrective, and other supportive services (includ-

meet their unique needs." 20 U.S.C. § 1400(c); *see* 20 U.S.C. § 1412(1). The primary means of assuring that each disabled child is given a meaningful opportunity to benefit educationally under the IDEA is the "individualized education program" or IEP.[5]

An IEP is a written assessment of each child with a disability which includes a plan specifically tailored to meet the child's unique needs. 20 U.S.C. § 1401(a)(20). An IEP must set out the child's present educational performance, establish annual and short-term objectives for improvements in that performance and describe the specially designed instruction and related services that will enable the child to meet those objectives. 20 U.S.C. § 1401(a)(20)(A)–(F). The IDEA requires that an IEP be the product of a meeting between a representative of the local school district, the child's teacher and the child's parents or guardian. 20 U.S.C. § 1401(a)(20). An IEP must be reviewed and, if necessary, revised at least once a year. 20 U.S.C. § 1414(a)(5).

### B. Factual Background

This case involves the education of Evan Searing, a seven year old student at the Cathedral School ("Cathedral") in Natchez, Mississippi. At eighteen months of age, Evan was diagnosed with ataxic cerebral palsy at the Modern Development Center in Houston, Texas. Following this diagnosis, it was recommended that Evan receive occupational, physical and speech therapy. Evan initially received these treatments at the Cerebral Palsy School in Houston. When he was three years old, Evan became eligible for, and his parents enrolled him in, the Early Childhood Program in the Texas School System. In accordance with the IDEA, the local school district developed and implemented an IEP for Evan. Through this program, Evan attended public school and was provided with the "related services" of speech, occupational and physical therapy by the local school district. *See* 20 U.S.C. § 1401(a)(17).

In December, 1992, the Searings transferred from Houston to Natchez. Upon their arrival, the Searings enrolled Evan in a public school in the Natchez–Adams School District where he was placed in the pre-school Developmental Remedial Delay Program. Natchez–Adams adopted the IEP developed for Evan in Texas and, as part of this program, provided him with occupational and physical therapy during the remainder of the 1992–93 school year and during the summer of 1993. These services did not take place at a particular public school site but at the Natchez Regional Hospital ("NRH"). Evan's mother was responsible for transporting Evan from his school to the NRH where he received thirty minutes of occupational therapy per week. This occupational therapy consisted of activities designed to improve Evan's fine and gross motor skills such as writing and cutting.

At some point during the summer of 1993, Natchez–Adams was in the process of preparing a revised IEP for Evan to be implemented during the 1993–94 school year. Prior to the finalization of this program, the Searings decided to enroll Evan in Cathedral, a private, religious school. According to the Searings, this decision was based on academic and religious reasons and had nothing to do with whether the public school was capable of providing Evan with the educational services which he needed. Natchez–Adams informed the Searings that if they placed Evan in the private school, the school district would no longer provide related services as part of a free appropriate public

---

ing speech pathology and audiology, psychological services, physical and occupational therapy ...) as may be required to assist a child with a disability to benefit from special education....
20 U.S.C. § 1401(a)(17).

**5.** *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). Section 1414(a)(5) provides:
A local educational agency ... which desires to receive [federal funding] shall submit an application to the appropriate State educational agency. Such application shall— ... (5) provide assurances that the local educational agency ... will establish or revise, whichever is appropriate, an *individualized education program* for each child with a disability ... at the beginning of each school year and will then review and, if appropriate, revise, its provisions periodically, but not less than annually.
20 U.S.C. § 1414(a)(5) (emphasis added).

education. The Searings enrolled Evan at Cathedral· anyway, and Natchez–Adams discontinued the provision of occupational therapy. During the 1993–94 school year at Cathedral, Natchez–Adams did not develop or implement an IEP for Evan, and Evan did not receive occupational therapy at NRH as he had when he attended the public school.

Toward the end of the 1993–94 school year, two IEP meetings were held regarding the placement of Evan at Cathedral. At both meetings, Natchez–Adams offered to provide Evan with a free appropriate public education if his parents would re-enroll him in the public schools. However, the district continued to abide by its position that it was not required by the IDEA to provide Evan with occupational therapy while he was attending a private school.

In an effort to resolve this dispute between the Searings and Natchez–Adams, a due process hearing was conducted on August 16, 1994. *See* 20 U.S.C. § 1415(b). During this hearing, both parties were given an opportunity to present testimonial and documentary evidence before an impartial hearing officer. In his report dated August 22, 1994, the hearing officer first concluded that children with disabilities who are placed by their parents in private schools are entitled to special educational services under the IDEA. He then ordered Natchez–Adams to provide occupational therapy for Evan in accordance with an evaluation to be performed by occupational therapist. *See* Report of Due Process Hearing at 5–6, attached as Exhibit D to Plaintiff's Motion.

Aggrieved by the results of the due process hearing, Natchez–Adams commenced this action on September 16, 1994, by filing a Complaint in federal court pursuant to 20 U.S.C. § 1415(e)(2). At a case management conference held in December, 1994, the par-

ties agreed to submit this matter for resolution on motions.[6] The issues presently before the Court are: (1) whether the IDEA requires the Natchez–Adams School District to provide educational services to a child voluntarily enrolled by his parents in a private school, and if so, (2) whether occupational therapy is required for Evan to benefit educationally.[7]

## II. *Discussion*

### A. Standard of Review

 The IDEA permits "[a]ny party aggrieved by the findings and decision" of state administrative hearings "to bring a civil action [in] . . . a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(e)(2). Section 1415(e)(2) also provides that:

> In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2). According to the United States Court of Appeals for the Fifth Circuit, the standard of review applied to a hearing officer's decision is "virtually *de novo.*" *Teague Indep. Sch. Dist. v. Todd L.,* 999 F.2d 127, 130–31 (5th Cir.1993). Although the hearing officer's findings should be given "due weight," the Court should not defer to those findings when its independent review of the evidence indicates that the hearing officer erroneously assessed the facts or erroneously applied the law to the facts. *Id.* at 131. Within this framework, the burden of proof is on the Plaintiff who is the party challenging the ruling of the hearing officer.[8]

---

6. Natchez–Adams did not file its present motion challenging the decision of the hearing officer until July 10, 1995.

7. Natchez–Adams suggests that the Court first consider whether occupational therapy is required and then, only if necessary, address the legal obligation of Natchez–Adams to provide educational services to disabled students in private schools. The Court does not agree that

approaching the issues in this order is the most logical manner to resolve the instant dispute.

8. *Fowler by Fowler v. Unified Sch. Dist. No. 259,* 900 F.Supp. 1540, 1543 (D.Kan.1995) (citing *Johnson v. Independent Sch. Dist. No. 4,* 921 F.2d 1022, 1026 (10th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991)); *Lyons v. Smith,* 829 F.Supp. 414, 417 (D.D.C. 1993) (citing *Angevine v. Smith,* 959 F.2d 292, 295 (D.C.Cir.1992)).

## B. Analysis

### 1. Is Natchez–Adams Obligated to Provide IDEA Benefits for Private School Students?

There is no question that the IDEA confers substantive rights on private school students. The IDEA provides that if a particular child's needs cannot be met in the public school system, that system is still responsible for the child's special education and related services, even if it places the child in or refers the child to a private school or facility. 20 U.S.C. § 1413(a)(4)(B); *see also* 34 C.F.R. §§ 300.400–300.402. If a disabled child's needs can be met in the public school system, and the parents voluntarily place the child in a private school, the public agencies are not required to pay for the child's tuition[9] and need not provide the child with a free appropriate public education at the private school facility. 34 C.F.R. § 300.403. However, with respect to such children, section 1413(a)(4) specifically states:

> [T]hat, to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision [shall be made] for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services.

20 U.S.C. § 1413(a)(4)(A).

■ The IDEA itself does not fully reveal the obligations of a local school district to private school students such as Evan. Thus, the Court must look to the relevant federal regulations for guidance in this area.[10] The implementing regulations of the IDEA make it abundantly clear that where parents choose to place their disabled child in a private school, the public school system must provide that child with an opportunity to receive special education and related services. *See* 34 C.F.R. § 300.403; 34 C.F.R. §§ 300.450–300.452. To be eligible for federal funding, the state educational agency[11] must provide assurances that private school children with disabilities have an opportunity to participate in a program of educational services. 34 C.F.R. § 300.451; *see* 20 U.S.C. § 1413(a)(4)(A). A local educational agency,[12] which desires to receive federal funds made available to the state, must also ensure that special education and related services are provided for disabled private school children residing within its jurisdiction. 34 C.F.R. § 300.452; *see* 20 U.S.C. § 1414(a)(6).

Concerning the provision of benefits, the IDEA regulations incorporate by reference the procedural requirements set forth in the Education Department General Administrative Regulations ("EDGAR") 34 C.F.R. §§ 76.651–76.662. 34 C.F.R. § 300.451(b). Under the EDGAR regulations, a public school district "shall provide students enrolled in private schools with a genuine opportunity for equitable participation" in a program of benefits. 34 C.F.R. § 76.651(a)(1). The program of benefits that a public school district provides for private school children "must be comparable in quality, scope, and opportunity for participation" to that provided for public school students. 34 C.F.R. § 76.654(a). In developing a program, the public school district must consult with private school representatives and consider: (1) which students will receive benefits under the program; (2) how the student's

---

9. *Burlington Sch. Committee v. Massachusetts Dept. of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), and its progeny allow the parents of private school children to seek a tuition reimbursement if the local school district cannot provide a free appropriate public education. Because the Searings have not requested a tuition reimbursement, this is not an issue in this case.

10. Where a statute is silent or ambiguous, administrative regulations "are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 763 (5th Cir.1995) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). The federal regulations at issue here are reasonable and consistent with the purpose of the IDEA.

11. The Mississippi Department of Education is a "state educational agency" as that term is defined by the IDEA. *See* 20 U.S.C. § 1401(a)(7).

12. The Natchez–Adams School District is a "local educational agency" as that term is defined by the IDEA. *See* 20 U.S.C. § 1401(a)(8)

needs will be identified; (3) what benefits will be provided; (4) how the benefits will be provided; and (5) how the program will be evaluated. 34 C.F.R. §§ 76.652(a)(1)–(5). During this process, the public school district is required to make its determinations "on a basis comparable to that used . . . in providing for participation of public school students." 34 C.F.R. § 76.653. The EDGAR regulations further require the public school district to spend a different average amount on program benefits for students enrolled in private schools if the average cost of meeting the needs of those students is different from the average cost of meeting the needs of students enrolled in public schools. 34 C.F.R. § 76.655. In addition, the public school district must give the private school representatives notice and an opportunity to be heard before any decision is made regarding the program. 34 C.F.R. § 76.652(b)–(c).

Natchez–Adams does not dispute that the IDEA confers some rights on private school children. However, it interprets the applicable statutes and regulations as giving it broad discretion to decide whether and to what extent educational benefits will be provided to a disabled student who has been voluntarily placed in private school by his parents. Natchez–Adams argues that its obligation under the IDEA to provide special services for Evan at Cathedral was satisfied when it consulted with the Searings and informed them of the availability of a free appropriate public education if Evan returned to public school. The Searings argue that Plaintiff's duties to private school children are not so easily discharged and that its attempt at compliance falls well short of the standards and requirements of the Act. They contend that the purpose of the IDEA is to provide aid for the education of all disabled children whether they are placed in public or private schools. By making the availability of special educational services contingent on enrollment in public school, the Searings submit that Natchez–Adams is not providing any opportunity, much less a "comparable opportunity," for private school children to participate equitably in a program of benefits.

As Special Education Director for the Natchez–Adams School District, Annie Patterson ("Patterson") states that she meets and consults throughout the school year with representatives of Cathedral, regarding its students who might qualify for special education services. Aff. of Annie Patterson at 1, attached as Exhibit E to Plaintiff's Motion. After identifying eligible students at Cathedral, Patterson explains that she meets personally with their parents to ensure that they are aware that such services are available for their children if they are enrolled in the public schools in the district. *Id.* at 2. According to Catherine Cook, Assistant Principal of Cathedral School, there is some cooperation between Natchez–Adams and the Special Education Department for evaluating students with disabilities attending Cathedral. Trans. at 38. However, Natchez–Adams offers special education and related services to Cathedral students only if their parents enroll them in public schools and does not provide such services for children who continue to attend Cathedral. Aff. of Catherine Cook at 1, attached as Exhibit 9 to Defendant's Cross–Motion.

With respect to Evan's education, Patterson testified that, at some point during March, 1994, she met with Evan's teacher at Cathedral, Kathy Smith ("Smith"), to discuss his progress. Trans. at 47. When questioned about the purpose of this meeting with Smith, Patterson responded, "[b]ecause I knew that if Evan came back to us, we would have to know some of the things that [Cathedral] was doing to enhance his education." Trans. at 48. On April 25, 1994, Patterson convened an IEP meeting with Mrs. Searing, Smith and Cook. When asked why she called this meeting, Patterson responded that it was for the purpose of "[o]ffering [Evan] our program in the public schools." Trans. at 50. On May 26, 1994, Patterson convened a second IEP meeting and once again offered to provide educational services for Evan if the Searings re-enrolled him in the public schools. Trans. at 51. According to Cook, who attended all three meetings, "it was [her] understanding that the services that were being requested by [the Searings] would be available to them if Evan was enrolled in the public school system." Trans.

at 40. Regarding the provision of related services for Evan if he remained at Cathedral, the following dialogue transpired between counsel for the Searings and Patterson:

Q: Is it your understanding that Natchez–Adams will not provide Evan with [occupational therapy] so long as he's at Cathedral?

A: Yes.

Trans. at 46. Similarly, Willie James Hoskin, Superintendent of Public Schools for the Natchez School District testified as follows:

Q: Would it be correct to say that the Natchez–Adams School District's position is that so long as Evan is at the Cathedral School, you will not provide Occupational Therapy to him?

A: That is, I think, in essence, correct.

Trans. at 57.

In support of its position that the provision of services for Evan is discretionary, Natchez–Adams relies almost exclusively on *Crespo v. New Haven Bd. of Educ.*, 20 IDELR 1371 (D.C.Conn.1993). *Crespo* involved a learning disabled student who was voluntarily placed by her parents in a private school. *Id.* at 1371–72. An IEP team, consisting of public and private school representatives, convened and recommended that the child receive five and one-half hours of educational services per week for her condition if she attended public school. *Id.* at 1372. The team concluded, however, that the child was eligible for only one hour of educational services if she remained enrolled at the private school. *Id.* After an unsuccessful due process hearing, the parents commenced an action in federal court pursuant to 20 U.S.C. § 1415(e)(4), asserting that the services offered to their child while she was attending a private school were not "comparable" to those she would receive if she were enrolled in a public school. *Id.* at 1373.

In reviewing the decision of the administrative hearing officer, the *Crespo* Court noted that the plain language of the IDEA and relevant regulations did not clearly and unambiguously reveal the precise obligations that the public school system owed to private school students under the circumstances before it. *Id.* The court then sought guidance in interpretations offered by the Office of Special Education Programs ("OSEP"). *See Letter to Livingston*, 17 IDELR 523 (Feb. 15, 1991); *Letter to Mentink*, 18 IDELR 276 (Aug. 6, 1991); *Letter from Schrag*, 18 IDELR 742 (Jan. 22, 1992). Following these interpretations, the court observed that public school systems are obligated to: (1) make a free appropriate public education available to parentally-placed children should they return to public school, and (2) provide parentally-placed children with a genuine opportunity for equitable participation in programs of special education and related services. *Crespo*, 20 IDELR at 1374. In fulfilling the second obligation, the court interpreted the position of the OSEP to be that public school systems were not required to serve every parentally-placed private school child and that they had considerable discretion in determining, through meaningful consultation, the number of private school students who would receive services and the extent of the services to be provided. *Id.* Since the school board in *Crespo* offered a free appropriate public education to the child if she were enrolled in public school, and since it meaningfully consulted with private school representatives in identifying the needs of its students and in determining which students it would serve, the court held that its decision to limit her to one hour per week of special services was reasonable. *Id.*

Because the school board in *Crespo* provided the child with some related services while she was attending private school and did not completely condition the provision of services on her enrollment in public school, Plaintiff's reliance on this case is misplaced. Unlike the school board in *Crespo*, Natchez–Adams has not offered Evan any equitable opportunity to participate in a program of educational benefits should he remain at Cathedral. Local educational agencies must make special education and related services available to children while they are enrolled in private schools. *See* 34 C.F.R. § 300.403(a); *see also Letter from Schrag*, 18 IDELR at 744. Contrary to what Natchez–Adams appears to suggest, this obligation is not fulfilled simply by consulting with the parents of private school children and offering them a free ap-

propriate public education in the public schools. Conditioning the provision of educational services on public school enrollment is not an equitable opportunity for private school children to participate in a program of benefits and is inconsistent with the stated purpose of the IDEA to educate all children with disabilities. *See* 20 U.S.C. § 1400(c). If Plaintiff's duty to Evan could be discharged in this manner, then the language of the IDEA and regulations pertaining to parentally-placed students would be meaningless. *See* 34 C.F.R. §§ 300.450–300.452.

 To determine which private school students will be served and the nature and extent of the services to be provided, the local school district must follow the process of consultation set forth in the EDGAR regulations at 34 C.F.R. §§ 76.651–76.662. *Letter from Schrag,* 18 IDELR at 744. The decision to discontinue Evan's occupational therapy was not based on a process of consultation which incorporated an equitable method of allocating educational services to children with disabilities. Rather, Natchez–Adams based its decision entirely on where Evan was enrolled in school. Since Natchez–Adams has not made any meaningful and legitimate effort to include Evan in a program of benefits, the Court finds that the school district has not complied with the IDEA.

The Court finds ample support for this conclusion in recent decisions from other district courts. The facts of *Cefalu v. East Baton Rouge Parish Sch. Bd.,* 907 F.Supp. 966 (M.D.La.1995), are closely analogous to those present in the instant case. *Cefalu* involved a hearing impaired student who was provided a sign language interpreter while he attended public school. *Id.* at 966. Although the services provided by the public school were adequate, the child's parents voluntarily enrolled him in a private, parochial school. *Id.* at 967. The local school district denied the parents' request to provide the child with a sign language interpreter while he attended the private school. *Id.* However, the district did agree to provide the services if he returned to the public schools. *Id.* After exhausting administrative procedures, the parents filed suit under the IDEA. *Id.*

The court rejected the argument that the school district had the discretion to deny private school students an opportunity to participate in a program of benefits and specifically held that the child was entitled to a sign language interpreter while he attended private school. *Id.* at 967–68.

The *Cefalu* Court followed the reasoning of *K.R. by M.R. v. Anderson Commun. Sch. Corp.,* 887 F.Supp. 1217 (S.D.Ind.1995), and adopted this opinion as its own. 907 F.Supp. at 968. In *K.R. by M.R.,* the parents of a disabled student filed suit under the IDEA after the local school corporation refused to provide an instructional assistant to attend classes with the child at a private, parochial school. *Id.* at 1219–20. After examining the IDEA and its implementing regulations, the court concluded that the school corporation was required to provide an in-class instructional assistant at the private school. *Id.* at 1225. In reaching this decision, the court observed:

> [The] regulations create legally enforceable entitlements for all private school students with disabilities, no matter how they [are] placed. By requiring program benefits for private school students that are "comparable in quality, scope and opportunity for participation" to those offered to public school students, § 76.654(a) is plainly designed to remove (or at least minimize) a child's disability as a factor for the child and her parents to consider in choosing between a public school and a private school. Thus, under § 76.654(a), a disabled child and her parents should have essentially the same choice between the local public school and a private parochial school that a child without special needs would have.

*Id.* (citation omitted). *K.R. by M.R.* was also followed in *Fowler by Fowler v. Unified Sch. Dist. No. 259,* 900 F.Supp. 1540, 1545 (D.Kan.1995). In this case, as in *Cefalu,* the court ruled that a local school district was required to provide one-on-one interpretative services for a hearing impaired student attending a private school.

According to *Crespo* and the OSEP, a local school district is generally not required to provide special educational services for a dis-

abled student on the premises of the private school. *See Crespo* 20 IDELR at 1373 (quoting *Livingston*, 17 IDELR at 525); *Pennsylvania Sch. Dist.*, 22 IDELR 201 (Feb. 1, 1995) (citing *Crespo* in support of this proposition). However, in *Cefalu, K.R. by M.R.* and *Fowler*, this is precisely the relief which the courts granted.[13] It is important to note that, unlike the parents in these cases, the Searings are not requesting Natchez–Adams to provide special services for Evan on the premises of Cathedral. They are instead asking for the school district to provide weekly occupational therapy at the NRH. While there is apparently some disagreement regarding the obligation of a local school district to provide on-the-premises special services, the authorities cited herein all agree that private school children must be provided with "a genuine opportunity for equitable participation" in special education and related services. 34 C.F.R. § 76.651.

■ This Court reads the IDEA to require the local school district to make an equitable distribution of the IDEA resources made available to it among eligible students regardless of whether they attend a district school or a private school. The resources may not be sufficient to provide every child with every service he or she desires, or even needs. It is for this reason that the local school district is given some discretion in allocating its resources. However, in exercising its discretion, the local school district may not do so by totally excluding students who do not attend district schools.

Under the particular circumstances of this case, the Court finds that Natchez–Adams has not fulfilled its legal obligations to Evan under the IDEA. Accordingly, it is the opinion of the Court that this aspect of the hearing officer's decision should be upheld.[14]

Natchez–Adams may not refuse to provide educational services for Evan while he attends Cathedral simply because he is not enrolled in a public school in the district.

### 2. Is Occupational Therapy Required for Evan to Benefit from Special Instruction?

Having determined that Natchez–Adams has a legal obligation to provide Evan with an opportunity to participate in a program of benefits, the Court must now address the argument that occupational therapy is not required for him to benefit educationally. The IDEA defines "children with disabilities" as children "with ... speech or language impairments, visual impairments including blindness, ... [or] orthopedic impairments [15] ... who, by reason thereof, need special education and related services." 20 U.S.C. § 1401(a)(1)(A)(i)–(ii). Natchez–Adams does not dispute, and the Court finds, that Evan is a child with a disability within the meaning of this section. Since being diagnosed with cerebral palsy, Evan has suffered from various conditions, including both visual and orthopedic impairments. The Plaintiff does dispute, however, that Evan is a child, who by reason of his disabilities, needs occupational therapy.

Related services are those services, such as occupational therapy, which "may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(a)(17). With reliance on this definition, Natchez–Adams argues that the evidence presented at the due process hearing does not support a finding that Evan requires occupational therapy. Plaintiff bases this contention on the following: (1) the proposed IEP for the 1993–94 school year did not recommend that Evan receive occupational therapy, (2) Mrs. Searing testified that Evan benefited from his education at Cathe-

---

**13.** The courts found in each of these cases that the requested service would be meaningless unless provided at the private school site. *See Cefalu*, 907 F.Supp. at 968; *Fowler*, 900 F.Supp. at 1546; *K.R. by M.R.*, 887 F.Supp. at 1225.

**14.** In deciding this particular issue, the hearing officer relied, in part, on language contained in the State Plan of the Mississippi Department of Education. The Mississippi State Plan recites verbatim the policies and procedures found in 20 U.S.C. § 1413(a)(4)(A) and 34 C.F.R. Part 76.

*See* Mississippi State Dept. of Educ. State Plan, 1995–97, Section IX, pp. 43–44, attached as Exhibit 12 to Defendant's Cross–Motion.

**15.** The regulations define "orthopedic impairment" as "a severe orthopedic impairment that adversely affects a child's educational performance. The term includes ... impairments caused by disease ... and impairments from other causes (e.g. cerebral palsy ...)." 34 C.F.R. § 300.7(b)(7).

dral, (3) Evan's teacher, Kathy Smith, testified that Evan made good academic progress at Cathedral, (4) Evan's grade report from Cathedral indicated that ·he was making progress in the gross and fine motor skills area, and (5) Evan accomplished the objectives of the kindergarten program at Cathedral and was promoted to the first grade. According to Natchez–Adams, these circumstances indicate that Evan was receiving an educational benefit without occupational therapy and thus under the rubric of *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the hearing officer erred in granting this relief.

By suggesting that it has no obligation to provide occupational therapy for Evan unless the Searings first demonstrate that this service is required, Natchez–Adams confuses the standard to be applied in determining access to educational benefits with that required in designing the content of an IEP. In *Rowley*, the United States Supreme Court held that a hearing impaired child, who was an above average student and was advancing from grade to grade in a regular public school classroom setting, and who was already receiving substantial specialized instruction and related services, was not entitled, in addition, to a full time sign language interpreter, because she was already benefiting from the special education and related services which she was receiving. *Id.* at 210, 102 S.Ct. at 3052. In reaching this decision, the Court reasoned, "if personalized instruction is being provided with sufficient support services to permit the child to benefit from the instruction … the child is receiving a free appropriate public education" as required by the IDEA, and that "certainly the language of the statute contains no requirement … that States maximize the potential" of children with disabilities. *Id.* at 189, 102 S.Ct. at 3042.

 The child in *Rowley* was already receiving substantial educational services pursuant to an IEP and thus the dispute was not whether she would receive educational services at all but whether the extent of the services provided to her would include a sign language interpreter. In contrast, it is un-disputed in this case that Natchez–Adams has never developed and implemented a complete IEP for Evan. Because Natchez–Adams did not provide Evan with any educational services while he was enrolled at Cathedral during the 1993–94 school year, Plaintiff's reliance on *Rowley* is simply misplaced. As explained in *Timothy W. v. Rochester, N.H. Sch. Dist.*, 875 F.2d 954 (1st Cir.), *cert. denied*, 493 U.S. 983, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989):

> *Rowley* focused on the *level* of services and the quality of programs that a *state* must provide, not the criteria for *access* to those programs. The Court's use of "benefit" in *Rowley* was a substantive limitation placed on the state's choice of an educational program; it was not a license for the state to exclude certain handicapped children. In ruling that a state was not required to provide the maximum benefit possible, the Court was *not* saying that there must be proof that a child will benefit before the state is obligated to provide any education at all.

*Id.* at 971 (emphasis original). The potential benefit of a particular service is, of course, a pertinent consideration in reviewing the content of a child's IEP. However, it is irrelevant in determining access to educational services. *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1290 (5th Cir.1991) (citing *Timothy W.*, 875 F.2d at 971). While the IDEA does not require a public school system to maximize a disabled child's capacity for learning, it does require a "basic floor of opportunity," consisting of access to specialized instruction and related services. *Rowley*, 458 U.S. at 201, 102 S.Ct. at 3048. The IDEA, through its implementing regulations ensures access to educational services by requiring the responsible public agency to design and implement an IEP for each child with a disability. Since Natchez–Adams failed to establish or revise an IEP for Evan, the Court need not reach the underlying factual issue of whether a preponderance of the evidence supports the hearing officer's decision.

## C. Relief

As the preceding discussion illustrates, Natchez–Adams has violated the IDEA in at

least two principal respects: first, it failed to provide Evan with a meaningful and legitimate opportunity to participate in a program of benefits; and second, it failed to provide Evan with access to educational services by designing and implementing an IEP for him. The Court must now determine what relief is appropriate to remedy the shortcomings in Evan's educational program.[16] The hearing officer ordered Natchez–Adams to provide Evan with occupational therapy of a frequency and duration recommended by an occupational therapist. However, he did not order Natchez–Adams to consult with the Searings and Evan's teachers in formulating a new or revised IEP based on the therapist's evaluation. Plaintiff points out, and the Court agrees, that an evaluating therapist does not have the sole authority to make decisions affecting a disabled child's educational program. Such decisions must be the product of the IEP process and must be made by an IEP team consisting of, in addition to evaluating therapists, district representatives, parents and teachers. *See* 20 U.S.C. § 1401(a)(20); 34 C.F.R. §§ 300.340–300.346. Because the hearing officer did not strictly adhere to these requirements, the Court finds that the relief which he ordered is inappropriate. This is not to say, however, that the Searings are entitled to no relief at all.

When this dispute came before the hearing officer, the only completed IEP for Evan was the one designed by the Texas School System in November, 1992. This IEP, which was in effect when the Searings moved to Natchez, recommended that Evan receive thirty minutes of occupational therapy per week. Natchez–Adams served Evan under his Texas IEP and provided him with occupational therapy at NRH during the 1992–93 school year and during the summer of 1993. Although Natchez–Adams was in the process of preparing an updated IEP for the 1993–94 school year, it never completed this program because the Searings enrolled Evan in Cathedral.[17] These circumstances lead the Court to conclude that the Texas IEP is still in effect and unless and until Natchez–Adams revises its contents in accordance with the standards and requirements set forth in the applicable regulations, the school district is obligated to provide the related services recommended therein. The Court therefore determines that Natchez–Adams is required to provide Evan with at least thirty minutes of occupational therapy per week at NRH.

If Natchez–Adams disputes that Evan presently requires occupational therapy or disagrees with the frequency and duration of this service, it may initiate the IEP process and formulate a new or revised IEP which is appropriate to his learning capabilities. If Natchez–Adams formulates a new or revised IEP for Evan, the Court emphasizes that it "must be reasonably calculated to enable the child to receive educational benefits." *Christopher M.*, 933 F.2d at 1290 (quoting *Rowley*, 458 U.S. at 207, 102 S.Ct. at 3051). The Searings may, of course, challenge, via a new due process hearing, any determination made by Natchez–Adams regarding the content of Evan's IEP.

### III. *Conclusion*

In sum, Plaintiff's arguments that Evan has no right to related services while he attends Cathedral and that he no longer requires occupational therapy to benefit educationally are without merit. As such, it is the opinion of the Court that Plaintiff's Motion should be denied. In so ruling, it should be apparent that Defendants' Cross–Motion is well-taken and should be granted in all respects except that Natchez–Adams is not required to provide Evan with occupational therapy as ordered by the hearing officer. However, Natchez–Adams is required to provide Evan with at least thirty minutes of

**16.** Notwithstanding the decision of the hearing officer, section 1415(e)(2) of the IDEA permits the Court to grant such relief as it determines is appropriate.

**17.** This proposed IEP was drafted, in large part, by Evan's public school teacher, Melody Darsey, and did not include a recommendation for occu-

pational therapy. The Searings had requested a conference with Patterson to discuss the provision of this service, but before this matter could be resolved, Evan was enrolled at Cathedral. Thus, the omission of occupational therapy from this incomplete IEP is of no consequence for these purposes.

occupational therapy per week as set forth in his Texas IEP.

For the reasons set forth in this Opinion:

IT IS THEREFORE ORDERED that the Motion of the Plaintiff Natchez–Adams School District to Overturn Administrative Hearing Decision is hereby denied.

IT IS FURTHER ORDERED that the Cross–Motion of the Defendants, Evan Michael Searing, by his parents, Pamela S. and Michael A. Searing, for Summary Judgment to Affirm Administrative Hearing Decision is hereby granted in part.

A separate judgement consistent with this Opinion and Order will be entered this day.

SO ORDERED.