**REVISED June 29, 2017**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20439

C. G., by and through her next friends Keith and Linda G.,

      Plaintiff - Appellant

v.

WALLER INDEPENDENT SCHOOL DISTRICT,

      Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
June 22, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-00123

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

WIENER, Circuit Judge:*

    Plaintiff-Appellant C.G., by and through her parents, claims that Defendant-Appellee Waller Independent School District ("WISD") failed to provide her with a Free and Appropriate Public Education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"). C.G.'s parents seek (1)

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20439

reimbursement for the cost of placing her in a private school setting and (2) injunctive relief for discrimination under § 504 of the Rehabilitation Act. The district court granted WISD's motion for summary judgment, holding that WISD provided C.G. with a FAPE and that she could not succeed on her § 504 claim. We affirm.

I.

FACTS

## A.    Factual Background

C.G. is a child afflicted with autism and pervasive developmental delays. Over the course of the 2011-12 and 2012-13 school years, WISD administered an Individualized Education Program ("IEP") for C.G.  based on her eligibility to receive special education services. Her IEP included instruction in the special education classroom, speech therapy, and occupational therapy, among other types of instruction, all based on recommendations and goals set forth by her parents and various professionals involved in her education.

Dissatisfied with C.G.'s progress, her parents rejected WISD's proposed IEP for the 2013-14 school year and proposed extended school year services for the 2013 summer. They enrolled C.G. in a private school, retained certified special education teachers and specialists, and assembled private speech therapy sessions.[1]

## B.    Procedural Background

C.G.'s parents sought reimbursement for the cost of placing her in the private education setting through a due process hearing before the Texas Education Agency ("TEA"). The TEA reviewed evidence, heard live testimony, and considered the parties briefs, then held that WISD had provided C.G. a

---

[1] C.G.'s parents claim that she has shown progress in this new setting.

No. 16-20439

FAPE because her IEPs were appropriate and the least restrictive environment for her educational benefit.

The parents appealed the TEA's decision to the district court and added a claim of discrimination under § 504 of the Rehabilitation Act. They moved for judgment on the administrative record, seeking reimbursement for C.G.'s private placement and injunctive relief under § 504 for discrimination. WISD moved for summary judgment on all claims. The district court granted WISD's motion for summary judgment and denied the parents' motion for judgment on the administrative record.

II.

ANALYSIS

## A.    The Appropriateness of C.G.'s IEP

### 1. Standard of Review

We review the appropriateness of a school district's IEP de novo.[2] We review the district court's findings of fact for clear error.[3] The district court need only have based its decision on the preponderance of the evidence.[4] There is a presumption in favor of the educational placement established by a student's IEP, and the party attacking its terms has the burden of showing why the educational setting established by the IEP was not appropriate.[5]

### 2. Applicable Law

The IDEA's purpose is to ensure that children with disabilities have access to "free appropriate public education that emphasizes special education

---

[2] *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997).

[3] *Id.* This includes finding of facts such as that "a disabled student obtained educational benefits under an IEP."

[4] 20 U.S.C. § 1415(i)(2)(C).

[5] *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1291 (5th Cir. 1991).

and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."[6] The IDEA requires a school district receiving federal funds to implement policies and procedures for students with disabilities that ensure each child with a disability receives a FAPE.[7] To achieve that goal, the parents and the school district collaborate to develop an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[8] The educational benefits sought when developing an IEP "cannot be a mere modicum or *de minimis*; rather, an IEP must be likely to produce progress, not regression, or trivial educational advancement."[9]

If the parents of a child with a disability remove her from the special education program of a public school and enroll her in a private school without the public school's consent, the court may require the public school to reimburse the parents if the court determines that the public school did not provide a FAPE.[10]  To receive reimbursement, the parents must show: "(1) an IEP calling for placement in public school was inappropriate under IDEA, and (2) the private school placement by the parents was proper under the Act."[11] To show that the IEP was not appropriate, the parents must demonstrate that (1) the school district failed to comply with the procedural requirements of the

---

[6] 20 U.S.C. § 1400(d)(1)(A).

[7] 20 U.S.C. §§ 1412(a)(1), 1415(a).

[8] *Endrew F. v. Douglas Cty. Sch. Dist RE-1*, 137 S. Ct. 988, 999 (2017);  *R.H. v. Plano Indep. Sch. Dist.,* 607 F.3d 1003, 1008 (5th Cir. 2010).

[9] *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 (5th Cir. 2009) (quoting *Michael F.*, 118 F.3d at 249).

[10] 20 U.S.C. § 1412(a)(10)(C)(ii).

[11] *Michael F.,* 118 F.3d at 248 (citing *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985)).

IDEA and (2) the IEP was not "reasonably calculated to enable [the disabled child] to receive educational benefits."[12]

Our court has set forth four factors for determining if an IEP is reasonably calculated: "(1) the program is individualized on the basis of student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated."[13] "[T]hese factors are . . . intended to guide a district court in the fact-intensive inquiry of evaluating whether an IEP provided an educational benefit," and no factor is afforded more or less weight than the others.[14]

### 3. Analysis

Underlying this dispute is the question whether the district court articulated a standard that is in line with the standard articulated by the Supreme Court in the recent decision in *Endrew F. v. Douglas County School District*.[15] There the Court rejected the Tenth Circuit's standard that an IEP was "adequate as long as it is calculated to confer an educational benefit that is merely . . . more than de minimis."[16] The Court held that an IEP "must be appropriately ambitious in light of [the child's] circumstances" which is "markedly more demanding than the 'merely more than de minimis' test applied by the Tenth Circuit."[17]

---

[12] *Michael Z.*, 580 F.3d at 293 (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982)).

[13] *Michael F.*, 118 F.3d at 253.

[14] *Michael Z.*, 580 F.3d at 294.

[15] 137 S. Ct. 988 (2017).

[16] *Id.* at 997.

[17] *Id.* at 992, 1000.

No. 16-20439

Here, the district court explicitly stated that "[t]he educational benefit . . . 'cannot be a mere modicum or *de minimis*; rather, an IEP must be likely to produce progress, not regression or trivial educational advancement.'" The court focused on the four factors from *Michael F.* listed above to evaluate C.G.'s IEP which, it stated, "guide a district court in the fact-intensive inquiry of evaluating whether an IEP provided an educational benefit." The court extensively evaluated C.G.'s IEP then held that all four factors weighed in favor of concluding that her IEP was reasonable based on her specific needs and progress.[18] Although the district court did not articulate the standard set forth in *Endrew F.* verbatim, its analysis of C.G.'s IEP is fully consistent with that standard and leaves no doubt that the court was convinced that C.G.'s IEP was "appropriately ambitious in light of [her] circumstances."[19]

C.G.'s parents and WISD set forth different versions of the facts, but the district court did not clearly err in concluding that the evidence supports WISD's contention that C.G.'s IEP was appropriate. The record is replete with evaluations, observations, and information regarding C.G., her needs, and her performance level. WISD worked with C.G.'s teachers, a psychologist, an educational diagnostician, her private speech provider, her parents, and others to align goals and strategies. There is also evidence that C.G. was making progress, including a statement by her father in an email to WISD on April 22, 2013, referencing "the excellent progress [C.G.] has made since January." When C.G. mastered goals during the 2012-13 school year, additional goals

---

[18] The court's reasoning is especially persuasive considering that the burden is on C.G.'s parents to show that C.G.'s IEP was inappropriate. *See Schaffer v. Weast*, 546 U.S. 49, 57-58 (2005); *Christopher M.*, 933 F.2d at 1291.

[19] *See* 137 S. Ct. at 992.

and benchmarks were added. WISD adjusted its strategies multiple times, including altering C.G.'s school day in response to her parents' many concerns.

The burden of proof to overcome the legal presumption that the education program developed by the child's school is appropriate rests on the parents.[20] WISD could have taken different, and arguably better, approaches to C.G.'s IEP, but the role of the court is not to "second guess" the decision of the school district or to substitute its plan for the education of the student.[21] It is clear that WISD provided C.G. with an IEP that was reasonably calculated to enable her to make progress in light of her individual circumstances.

**B. § 504 Discrimination**

Under § 504 of the Rehabilitation Act of 1973, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."[22] C.G.'s parents claim that by placing every disabled student, including C.G., into the "highly restrictive" zoned classroom, WISD discriminated against C.G.

The district court ruled that C.G.'s parents "cannot sustain their § 504 claim because the School District 'implement[ed] . . . an Individual Education Program developed in accordance with [IDEA].'"[23] The parents responded that their § 504 claim is independent of the IDEA claim and cannot be dismissed merely because the IDEA claim fails.

---

[20] *Schaffer*, 546 U.S. at 57-58; *Christopher M.*, 933 F.2d at 1291.

[21] *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996).

[22] 29 U.S.C § 794(a).

[23] *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 994 (5th Cir. 2014) (alterations in original).

No. 16-20439

To determine if a § 504 claim is independent of an IDEA claim and may thus be sustained on its own, the court asks (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school – say, a public theater or library?" and (2) "could an *adult* at the school – say an employee or visitor – have pressed essentially the same grievance?"[24]

C.G.'s parents allege that their § 504 claim (1) could have been brought in a public facility and (2) could have been bought by an adult. We disagree. The parents' § 504 claim incorporates an identical factual background expressed in the same language as their IDEA claim.[25] In fact, their insistence that the zoned classroom produced a "highly restrictive" classroom setting, parrots the language of the IDEA's requirement that students be educated in the least restrictive environment possible. The district court did not err in concluding that the § 504 claim should be dismissed because it was not independent of C.G.'s IDEA claim.

### III.

### CONCLUSION

We AFFIRM the district court's judgment.

---

[24] *Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743, 756 (2017) (emphasis in original).
[25] *See e.g. Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1267 (10th Cir. 2007); *M.P. v. Indep. Sch. Dist. No.* 721, 439 F.3d 865, 868 (8th Cir. 2006).