# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 4, 2007

Charles R. Fulbruge III
Clerk

No. 06-41588

ALVIN INDEPENDENT SCHOOL DISTRICT,

Plaintiff-Appellee,

v.

AD, by next friend Patricia F,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellant A.D. appeals the district court's judgment in favor of Appellee Alvin Independent School District ("AISD"), finding that the Special Education Hearing Officer ("Hearing Officer") improperly determined that A.D. meets the definition of "child with a disability" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-91. We AFFIRM.

1

I.

A.D. is a student in AISD diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). A.D. receives medical treatment for his ADHD, including prescriptions for ADHD medications. He has attended AISD schools since he was three years old, and he participated in the district's Early Childhood and Preschool Program for Children with Disabilities on the basis of a speech impediment. Because of both the speech impediment and the ADHD, A.D. qualified for special education services through third grade, at which point his mother and school personnel agreed that he no longer qualified for those services. After his dismissal from special education, A.D. performed well throughout elementary school.

Starting in seventh grade, however, A.D. began to exhibit behavioral problems. He received numerous discipline referrals, and teachers removed him several times from the classroom and sent him to in-school suspension. A.D. was placed in the "At Risk" program at Alvin Junior High, which involved a Student Success Team consisting of several school personnel meeting regularly to discuss his performance. A.D. continued to pass all of his classes and met the statewide standards required by the Texas Assessment of Knowledge and Skills ("TAKS").

A.D.'s behavioral problems continued throughout eighth grade. Around this time, A.D. faced the tragic death of his baby brother. Additionally, A.D.

began to abuse alcohol, developed a strained relationship with his stepfather, and his mother was expecting a new baby. In response to these events and A.D.'s ongoing behavioral problems, the Student Success Team met with A.D. and drafted an "Academic and Behavior Contract," which required A.D. to abide by certain standards, such as taking his medication every day, following the dress code, and completing assignments on time. A.D. signed the contract and attended all but three of the remaining days in the school year. However, the behavioral problems continued. The Student Success Team recommended, but did not implement, two interventions.

A.D.'s behavioral issues culminated in theft of property and robbery of a school-sponsored concession stand. Due to the latter incident, A.D. was sent to in-school suspension for ten days, and AISD eventually recommended A.D.'s placement in an alternative education program. Even with these issues, however, A.D. passed the eighth grade with one A, three Bs, two Cs, and one D and passed the TAKS test, receiving an evaluation of "commended" on the reading portion.

On May 11, 2005, while the disciplinary decision for A.D.'s theft was pending, A.D.'s mother requested that A.D. receive special education services. On May 25, 2005, she requested a due process hearing[1] before an impartial

---

[1] The due process hearing was requested pursuant to 20 U.S.C. § 1415(b)(1), (f); 34 C.F.R. § 300.502, .507; 19 TEX. ADMIN. CODE § 89.1170. Any party aggrieved by the outcome of the due process hearing may file a

3

hearing officer selected by the Texas Education Agency, alleging that AISD violated A.D.'s right to a "free appropriate public education"[2] by failing to: (1) identify A.D. as a child with a disability, (2) evaluate A.D. as a child with a disability, and (3) place A.D. in special education. In response, the Admissions, Review, and Dismissal Committee ("ARD Committee") undertook a "full and independent evaluation" of A.D. that involved various psychological, behavioral, and intelligence tests; informal evaluations with a psychologist, an educational diagnostician, teachers, and A.D.'s mother; and a review of school files. The ARD Committee requested information from A.D.'s treating physicians but did not receive it before completion of the written report.

In the written report, A.D.'s cognitive abilities were found to be in the average range. Dr. Peters, the evaluating psychologist, concluded that A.D.'s symptoms of ADHD did not prevent him from making age-appropriate academic and social progress. Ms. McDaniel, the educational diagnostician, concluded that A.D.'s academic performance was "high average" in basic reading skills and "average" in all remaining areas. Approximately one month later, AISD received the information requested from A.D.'s treating physicians, Dr. Kazmi and Dr. Nguyen, who recommended special education services for A.D. AISD also

civil action in state or federal court. 20 U.S.C. §1415(i)(2); 34 C.F.R. §300.516.

[2] *See* Part III, *infra*.

4

received a report from Dr. Rasheed, a new, privately obtained psychiatrist, who recommended special education services. On August 25, 2005, the ARD Committee met to consider the reports and concluded that A.D. was not eligible for special education services. A.D.'s mother disagreed with the result and requested an "independent educational evaluation" pursuant to 20 U.S.C. § 1415(b)(1). AISD denied the request and initiated a due process hearing.[3]

The due process hearing took place on November 10 and 11, 2005. The Hearing Officer reviewed the record and heard testimony in support of A.D. from Dr. Kazmi, Dr. Nguyen, Dr. Rasheed, and Dr. Sharp, a psychologist who reviewed A.D.'s file but never met him. The Hearing Officer heard testimony from A.D.'s teachers and Dr. Peters in support of the ARD Committee's determination that A.D. was not eligible for special education services. Several teachers testified that A.D. was well-liked by his teachers and peers and agreed with Dr. Peters' conclusion that A.D. was making age-appropriate social progress. The Hearing Officer concluded that A.D. was a "child with a disability" entitled to special education services and that AISD failed to provide him with a "free appropriate public education." Additionally, the Hearing Officer concluded that AISD's "full and independent evaluation" was incomplete because a licensed physician was not part of the ARD Committee as required by 19 TEX.

---

[3] It is unclear from the record whether the due process hearing was conducted pursuant to the request from A.D.'s mother or AISD.

5

ADMIN. CODE §89.1040(c)(8) and, thus, determined that A.D. was entitled to an "independent educational evaluation."

AISD appealed the decision in federal district court, and both parties filed cross-motions for summary judgment. On October 6, 2006, the district court granted AISD's motion for summary judgment and denied A.D.'s motion, finding that A.D. did not need special education and related services by reason of his ADHD and was, therefore, not a "child with a disability" under the IDEA. A.D. now appeals.

II.

A district court must accord "due weight" to the Hearing Officer's findings. Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F., 118 F.3d 245, 252 (5th Cir. 1997) (citation omitted). However, the district court "must ultimately reach an independent decision based on a preponderance of the evidence." Id. Accordingly, the district court's review of the Hearing Officer's decision is "virtually de novo." Teague Indep. Sch. Dist. v. Todd L., 999 F.2d 127, 131 (5th Cir. 1993).

Our review of the district court's findings of underlying fact, including whether or not a student received an educational benefit, is for clear error. Michael F., 118 F.3d at 252; Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 347 (5th Cir. 2000). We apply these standards to IDEA cases notwithstanding

their resolution before the district court on summary judgment motions. See, e.g., Bobby R., 200 F.3d at 345.

## III.

The IDEA[4] places several conditions on the provision of federal aid to state special education programs, including that the state provide a "free appropriate public education"[5] to children with disabilities. 20 U.S. C. §1412(a)(1). A "free appropriate public education", which involves special education and related services, see 20 U.S.C. §1401(9), must be "specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." Michael F., 118 F.3d at 247-48. It thereby guarantees a "child with a disability" as defined under the IDEA a "basic floor" of educational

---

[4] The IDEA was reauthorized in 2004, and the new version became effective on July 1, 2005, after the events of this case but before the case was heard and decided by the Hearing Officer. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647, 2803 (codified as amended at 20 U.S.C. §§ 1400-1491). Similarly, the implementing regulations were recently rewritten, with the revisions taking effect on October 13, 2006. *See* Assistance to States for the Education of Children with Disabilities, 71 Fed. Reg. 46540 (August 14, 2006) (codified as amended at 34 C.F.R. § 300 *et seq.*). This opinion cites to the prior version of the IDEA and its implementing regulations. *See Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 207 (5th Cir. 1998) (citing "to the version of the IDEA in effect at the time of the events in th[e] case").

[5] In full, 20 U.S.C. § 1401(9) defines a "free appropriate public education" as:

> special education and related services that--
> (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

opportunity. See Bd. of Educ. v. Rowley, 458 U.S. 176, 201 (1982). The Supreme Court notes that a "free appropriate public education" does not require states "to maximize the potential of each handicapped child. . . ." Id. at 200.

Only certain students with disabilities, however, are eligible for IDEA's benefits. Specifically, to qualify for special education services a student must both: (1) have a qualifying disability and (2) "by reason thereof, need[] special education and related services." 20 U.S.C. §1401(3)(A). In making this determination, a state or local education agency (here, the ARD Committee) must conduct a "full and individual evaluation" following statutorily prescribed standards. 20 U.S.C. § 1414.

In this case, there is no dispute that A.D. satisfies the first prong because ADHD is considered an "other health impairment," a recognized qualifying disability. 20 U.S.C. § 1401(3)(A)(i). Thus, the central dispute pertains to the second prong: by reason of his ADHD, does A.D. need special education and related services? AISD contends that A.D. does not need special education services because his educational performance is adequate without them, and, in the alternative, any need for special education services derives from sources other than his ADHD.

A.

First, A.D. contends that the district court erred by failing to accord "due

weight" to the Hearing Officer's decision.  This argument is flawed.  In Teague

Independent School District v. Todd L., we held that, in applying the due weight

standard, "the hearing officer's findings are not conclusive and the district court

may take additional evidence and reach an independent conclusion based upon

the preponderance of the evidence."  999 F.2d 127, 131 (5th Cir. 1993).  In

undertaking its review, "the district court [need not] defer to [the hearing

officer's] findings when its own review of the evidence indicates that the hearing

officer erroneously assessed the facts or erroneously applied the law to the facts."

Todd L., 999 F.2d at 131.  The district court properly cited and utilized the due

weight standard of review.[6]

B.

A.D. also argues that the district court applied the wrong legal standard

when determining "need" under 20 U.S.C. § 1401(3)(A).  Specifically, A.D. argues

that the district court should have looked to whether or not his ADHD "adversely

affects his educational performance" rather than whether his ADHD adversely

impacts his ability to "benefit from regular education."[7]

---

[6] A.D. also asserts that both the district court and this court must apply a clearly erroneous
standard in reviewing the Hearing Officer's factual findings.  This argument is incorrect.  Rather, it is the
factual findings of the district court that we review for clear error.

[7] A.D. correctly asserts that this standard is used to determine what services need to be provided to
a child after he is deemed eligible for special education services under the IDEA. *See Rowley*, 458 U.S. at
200.  Because A.D. is not eligible for special education services, this standard is inapplicable.

A.D.'s argument is flawed for two reasons. First, the "adversely affects a child's educational performance" standard is a subpart of the definition of "other health impairment."[8] 34 C.F.R. § 300.8(c)(9). Thus, establishing an adverse effect on educational performance demonstrates that A.D. has an "other health impairment." As described above, however, determining that a child has an "other health impairment" only fulfills the first prong of the "child with a disability" analysis under 20 U.S.C. §1401(3)(A). A.D. must still fulfill the second prong by demonstrating that, by reason of his ADHD, he needs special education services. Therefore, the fact that A.D.'s ADHD adversely affects his educational performance does not necessarily mean that he is eligible for special education services under the IDEA.

Second, contrary to A.D.'s assertion, the district court did not base its holding upon the "benefit from regular education" standard. Under this standard, the district court would have focused exclusively on A.D.'s passing grades and TAKS scores. Rather, the district court also considered "a variety of sources, including aptitude and achievement tests, parent input, and teacher recommendations, as well as information about the child's physical condition,

---

[8] "Other health impairment means having limited strength, viatility, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that–(i) Is due to chronic or acute health problems such as. . .attention deficit hyperactivity disorder. . .and (ii) Adversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(9).

10

social or cultural background, and adaptive behavior. . . ." 34 C.F.R. § 300.306(c)(1)(i) (outlining procedures for determining "eligibility and educational need"). Therefore, in determining whether A.D. needs special education services by reason of his ADHD, the district court properly considered the unique facts and circumstances of this case.

C.

Finally, A.D. argues that the district court reached an incorrect conclusion in holding that he has no need for special education by reason of his disability. A.D. relies primarily on the reports and testimony of his doctors; his past behavioral issues; his failing grades on various exams and progress report cards; and AISD's attempts to assist A.D., such as the Academic and Behavior Contract and A.D.'s placement in the "At Risk" program. He argues that the district court placed undue weight on his academic performance, as determined by the TAKS test and final class grades.

AISD responds, and the district court agreed, that A.D. does not need special education services for several reasons. First, A.D.'s passing grades and success on the TAKS test demonstrate academic progress. See Rowley, 458 U.S. at 207 n.28 ("[T]he achievement of passing marks and advancement from grade to grade will be one important factor in determining educational benefit."). Second, A.D.'s teachers testified that, despite his behavioral issues, he did not

11

need special education and was achieving social success in school. AISD argues that the district court properly determined that the testimony of A.D.'s teachers, who observed his educational progress first-hand, is more reliable than much of the testimony from A.D.'s physicians, who based their opinions on faulty information culled from isolated visits, select documents provided by A.D.'s mother, and statements from A.D.'s mother about what she believed was happening in school.[9] Finally, AISD argues that much of A.D.'s behavioral problems are derived from non-ADHD related occurrences, such as alcohol abuse and the tragic death of A.D.'s brother. Thus, AISD asserts, any educational need is not by reason of A.D.'s ADHD, as required by the statute. We agree with AISD's argument and find that the district court's factual findings were not clearly erroneous.

After reviewing the record, we hold that the district court properly considered evidence of A.D.'s academic, behavioral, and social progress in determining that A.D. does not need special education services by reason of his ADHD and, therefore, is not a "child with a disability" under the IDEA. Because we find that A.D. does not qualify for special education services, we need not

_____

[9] For example, Dr. Rasheed testified that she drafted her report under the mistaken impression that A.D. was failing all of his classes and without knowledge of A.D.'s successful performance on the TAKS test. Moreover, A.D.'s physicians measured "need" according to whether or not A.D.'s potential could be maximized via special education services. However, as discussed above, a "free appropriate public education" does not require maximizing a student's potential.

12

reach his final argument regarding AISD's alleged procedural errors.

IV.

In light of the foregoing, the decision of the district court is AFFIRMED.