**D.G., by next friend B.G.,**
**Plaintiff–Appellee**

v.

**FLOUR BLUFF INDEPENDENT**
**SCHOOL DISTRICT, Defendant–**
**Appellant.**

No. 11–40727.

United States Court of Appeals,
Fifth Circuit.

June 1, 2012.

Christopher Lee Jonas, Law Offices of Christopher Jonas, Corpus Christi, TX, for Plaintiff–Appellee.

Cynthia Dianne Buechler, Esq., Buechler & Associates, P.C., Austin, TX, for Defendant–Appellant.

Before KING, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM: *

Regarding this action for D.G., a Texas high-school student, by his mother, B.G., Flour Bluff Independent School District (FBISD) contests: the district court's ruling, following a bench trial, that FBISD violated the Individuals with Disabilities Education Act (IDEA); and the attorney's-fees award to D.G. Primarily at issue is the court's holding that FBISD violated IDEA's Child Find provision by not timely evaluating D.G. for special education. VACATED and RENDERED.

I.

D.G. began his ninth-grade year in FBISD in fall 2008 with no significant history of behavioral or academic problems. Following several incidents of misbehavior and truancy to begin that school year ("horseplay" in the hallway, stealing food from the cafeteria, going through a teacher's desk drawers, skipping class), he was assigned that October to the Student Development and Guidance Center (SDGC), FBISD's disciplinary alternative school. That placement was to be for 31 "successful days" but lasted into the spring semester.

In November of that ninth-grade year, D.G.'s mother, B.G., provided FBISD a copy of a psychological evaluation, *prepared when D.G. was in the fifth grade,* diagnosing D.G. with attention deficit/hyperactivity disorder (ADHD). She also inquired about Section 504 accommodations. (Section 504 of the Rehabilitation Act of 1973 provides that no person shall "be denied the benefits of . . . any program or activity receiving Federal financial assistance" solely by reason of disability. 29 U.S.C. § 794(a).)

On 3 December, FBISD provided B.G. a parental information form for Section 504 purposes, which she completed and returned on 10 December. She noted, *inter alia:* she and D.G.'s father had divorced in 2007, and D.G. lived with her; when D.G. tried to re-establish his relationship with his father, his father told him he was not welcome in his home; D.G. was angry and had lost self-esteem as a result of the divorce; B.G.'s "areas of conflict" with D.G. (checked boxes) included arguing, computer, homework, lying, profanity, and yelling, although those "areas of conflict" had improved since D.G. began taking an anti-depressant; he rarely completed his homework, partly because the work made him tired; he had a history of sleeping problems; and he was seeing a psychologist.

A "student assistance team", consisting of a number of faculty and staff *and B.G.,* met on 8 January 2009 to discuss the behaviors—"distractibility, blurting out, noise making, failure to follow directions, failure to complete work, and skipping class"—that were "interfering with [D.G.'s] academic capabilities". B.G. reminded the team of D.G.'s ADHD diagnosis and fatigue and added that D.G. had experienced personal losses in the prior 18 months—his parents' divorce, the deaths of two grand-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

parents, and a sibling's leaving for college. It was determined that D.G. was eligible for Section 504 accommodations based on his ADHD.

Upon FBISD's request, on 20 January, B.G. provided a copy of a recent psychological evaluation of D.G., performed by his psychologist. That evaluation recommended, *inter alia:* returning D.G. from SDGC to the main campus; having him meet regularly with a school counselor; involving him in extracurricular, especially physical, activities; breaking up large assignments; developing classroom strategies to help him maintain attention; and regular communication between D.G.'s teachers and B.G.

On 26 January, the Section 504 committee, *including B.G.,* discussed the evaluation and made modifications to D.G.'s instruction: return to the main campus; counseling; shortened assignments; preferential classroom seating; organizational strategies; five-minute cooling-off periods, when necessary; a classroom "behavior management system"; a set of textbooks at home; and caffeine at lunch. B.G. confirmed that she knew how to access D.G.'s grades on the Internet.

Despite those accommodations, D.G.'s problems in the ninth grade continued. That March, the Section 504 committee, *including B.G.,* convened to discuss D.G.'s "disruptive behavior and truancy". The committee determined D.G.'s behavior was *not* a manifestation of his ADHD and, thus, assigned him again to SDGC. B.G. disagreed with that "manifestation determination" and opposed the SDGC placement.

On 30 April 2009, B.G., represented by counsel, filed a due-process-hearing request with the Texas Education Agency, claiming FBISD had denied D.G. a "free appropriate public education" under IDEA, 20 U.S.C. § 1412(a)(1), by: failing to identify him as needing special education; and failing to provide those services. On 8 May, FBISD answered that, *inter alia:* D.G. was making progress under his Section 504 plan; he did not exhibit a need for special education under IDEA; his mother had not requested a special-education evaluation; and it was willing to conduct an evaluation *once the requisite written consent was given.*

B.G. *did not consent,* however, to an IDEA "full and individual evaluation" (FIE) of D.G. *until 14 August 2009,* the fall of D.G.'s tenth-grade year, for which year he was at his school's main campus. The FIE, which noted D.G.'s diagnoses of ADHD and Tourette syndrome (mild motor and vocal tics were diagnosed in April 2009 by a neurologist retained by B.G.) and found no emotional disturbance or developmental disorder, was completed on 12 October. *Upon B.G.'s request,* the "admission, review, and dismissal committee" (ARDC), responsible under Texas law for making IDEA special-education eligibility determinations, *delayed meeting* until 5 November, at which time it considered the FIE and determined D.G. was not eligible for special education. B.G. disagreed, maintaining the teachers interviewed had not known D.G. long enough.

On 20 November 2009, in an attempt to settle the IDEA dispute, FBISD offered to provide D.G.: after-school tutoring three times a week for the duration of his tenth-grade year (2009–10); 30–minutes' counseling a week for the duration of that school year; a summer 2010 academics program; and continuing Section 504 accommodations. B.G. declined that offer.

Therefore, the requested due-process hearing was held on 1 December 2009. On 20 January 2010, the special-education hearing officer ruled for FBISD, concluding, after reciting most of the above facts, that D.G. had failed to prove he was eligible for special education under IDEA. (In that proceeding, B.G. raised the issue at

hand—whether FBISD had timely identified and evaluated D.G. for special education—but the hearing officer based his decision on the ground that D.G. was not eligible for special education under IDEA.)

Later that month, D.G.'s physician recommended a shortened school day due to D.G.'s recently diagnosed rheumatoid arthritis (not diagnosed until November 2009). On 28 January, D.G. was placed in IDEA special education (shortened school day) on that basis. D.G. has remained in such special education since that time. D.G. has passed all of his classes while in special education, and the parties agree that D.G. presently is receiving all IDEA benefits to which he is entitled. (It may be that D.G. is now completing, or has completed, his last year of high school.)

This action, filed in March 2010, claimed FBISD violated IDEA and sought, *inter alia, compensatory education for D.G.'s ninth-grade year, 2008–09.* B.G. claimed primarily that FBISD "failed in its [IDEA] Child Find obligation to timely evaluate D.G. to determine his eligibility for [special-education] services". B.G. also claimed D.G. was "an eligible student with a disability under [IDEA]" and that FBISD "failed to provide D.G. with a free appropriate public education in the 2008–2009 [ninth-grade] school year". B.G. also raised a Section 504 discrimination claim, but she did not pursue that claim at trial.

Following a bench trial in March 2011, the district court ruled that FBISD had violated the Child Find provision and awarded one-year's compensatory educational services and approximately $50,000 in attorney's fees. *D.G. ex. rel. B.G. v. Flour Bluff Indep. Sch. Dist.,* 832 F.Supp.2d 755 (S.D.Tex.2011) (Merits Order); 2011 WL 2446375 (S.D.Tex. 15 June 2011) (Fees Order). In concluding that FBISD had violated IDEA, the court ruled: FBISD had reason to suspect special education might be needed as early as

November 2008, when D.G. was in the ninth grade—in the light of D.G.'s behavior, his mother's requests for additional services, and his fifth-grade ADHD diagnosis (not provided by B.G. to FBISD until November 2008)—but failed to convene an ARDC meeting until November 2009, when D.G. was in the tenth grade. Merits Order at *7–8.

The court did not, however, include in its findings of fact or conclusions of law any determination that D.G. *needed* special education or that he was *eligible* under IDEA. Rather, it presented as the sole issue for decision "whether Defendant [FBISD] violated the IDEA 'Child Find' provision", *id.* at *1, and likewise concluded its analysis, "Defendant thus violated IDEA's Child Find provision", *id.* at *8.

## II.

FBISD challenges the ruling that it violated IDEA. It also challenges, on several bases, the attorney's-fees award. B.G. does not contest the district court's failure to conclude that D.G. needed IDEA special education. Both parties waived oral argument here, although B.G. requested, and was granted, leave to file a sur-reply brief.

### A.

IDEA, 20 U.S.C. § 1400 *et seq.,* is a statute under the Spending Clause, U.S. Const. art. 1, § 8, cl. 1, that seeks "to ensure ... all children with disabilities have available to them a free appropriate public education". 20 U.S.C. § 1400(d)(1)(A). In furtherance of that end, a party is entitled to an "impartial due process hearing" before a state special-education hearing officer upon presenting a complaint claiming a violation regarding "the identification, evaluation, or educational placement of [a] child". 20 U.S.C. § 1415(b)(6)(A), (f).

A party aggrieved by the decision of a state hearing officer may file an action in

federal court "with respect to the complaint presented". 20 U.S.C. § 1415(i)(2)(A). The court is to receive the administrative record, hear additional evidence at the request of any party, and grant such relief as it deems appropriate. 20 U.S.C. § 1415(i)(2)(C). "Although the district court must accord due weight to the hearing officer's findings, the court must ultimately reach an independent decision based on a preponderance of the evidence." *Hous. Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 583 (5th Cir. 2009) (internal quotation marks omitted). The district court's ruling, a mixed question of law and fact, is reviewed *de novo*; its underlying factual findings, for clear error. *E.g., R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5th Cir.2010).

■ To be eligible for IDEA special education, a student must: (1) have a qualifying disability; and, (2) because of that disability, *need* special education. 20 U.S.C. § 1401(3)(A). The at-issue Child Find provision states: "All children with disabilities residing in [a] State … *who are in need of special education and related services*, are [to be] identified, located, and evaluated". 20 U.S.C. § 1412(a)(3)(A) (Child Find) (emphasis added); *see also* 34 C.F.R. § 300.111(c)(1) (Child Find includes children "suspected of being a child with a disability … *and in need of special education*, even though they are advancing from grade to grade". (emphasis added)). Because Texas receives IDEA funding, its school districts must comply, *inter alia*, with the Child Find provision.

Apparently, there is no fifth circuit, or other circuit, authority on whether a school district can be liable for a Child Find violation if the student is *not* eligible for IDEA special education. In any event, FBISD concedes that D.G. had a qualifying disability during 2008–09, his ninth-grade year. (ADHD and Tourette syndrome are each an "other health impair-

ment", a qualifying disability under 34 C.F.R. § 300.8(c)(9).) The question, then, arguably is whether D.G. *needed* special education at that time. 20 U.S.C. § 1401(3)(A). Instead, B.G. maintains, and the district court agreed, that FBISD's failure to evaluate him for special education *prior to November 2009*, his tenth-grade year, was a statutory violation for which he should recover, *regardless of whether he ultimately was eligible for special education*. Merits Order at *7–8. Our precedent, however, suggests otherwise.

In *Alvin Independent School District v. A.D. ex rel. Patricia F.*, 503 F.3d 378 (5th Cir.2007), A.D. endured the death of his brother and a strained relationship with his stepfather and began abusing alcohol, all while in the eighth grade. A.D. began misbehaving in school, eventually robbing a concession stand, after which a disciplinary alternative school was recommended. Meanwhile, A.D.'s mother requested an IDEA due-process hearing, claiming the school district had failed to identify, evaluate, and place A.D., who had ADHD, in special education. The hearing officer agreed, overruling the ARDC's ineligibility determination and further ordering an independent evaluation because there had been no licensed physician on the ARDC. *Id.* at 380–81.

The school district prevailed in district court. *Id.* at 381. Our court upheld the district court's ruling that "A.D. does *not need* special education services by reason of his ADHD and, therefore, is not a 'child with a disability' under the IDEA". *Id.* at 384 (emphasis added). As for A.D.'s contention that he was entitled to an independent evaluation, our court held: "Because we find that A.D. does not qualify for special education services, we need not reach his final argument regarding [the school district's] alleged procedural errors". *Id.; see also id.* at 382 ("Only

certain students with disabilities ... are eligible for IDEA's benefits."). Although Child Find was not at issue in *A.D.*, the decision is nevertheless persuasive because it involved the preliminary question at issue here: whether the student was eligible for special education under IDEA. Having answered in the negative, our court proceeded no farther.

B.G.'s briefing contains only one and one-half pages of argument on this question. It cites, without further discussion, three cases for the statement that "[f]ailure to identify and evaluate a potentially disabled child in itself has been found to constitute [a] *per se* violation of IDEA". Nor do these non-fifth circuit, district court decisions relied upon by B.G. support the proposition that FBISD can be liable for the alleged untimely evaluation, irrespective of whether D.G. ultimately was eligible for (needed) special education. Rather, in each case, relief was preconditioned on an IDEA eligibility determination.

In *N.G. v. District of Columbia*, 556 F.Supp.2d 11 (D.D.C.2008), the court ruled plaintiff was eligible for special education and awarded reimbursement of private-school tuition made necessary by the school district's failure to evaluate plaintiff. *Id.* at 35–37. In *Hawkins ex rel. D.C. v. District of Columbia*, 539 F.Supp.2d 108 (D.D.C.2008), the court ruled the school district was not excused from its Child Find duty simply because plaintiff was not registered at his local school and ordered a meeting be convened to determine his special-education eligibility. *Id.* at 114–16. And, in *District of Columbia v. Abramson*, 493 F.Supp.2d 80 (D.D.C.2007), the court ruled the school district could not halt its special-education evaluation upon plaintiff's transferring to an out-of-state private school and ordered it to complete that evaluation. *Id.* at 84–85. Notably, the court approved of the hearing officer's rul-

ing that plaintiff be reimbursed private-school tuition if, *inter alia*, he "*was later determined to be a 'child with a disability'*". *Id.* at 86 (emphasis added).

Therefore, to rule for D.G., our court must hold that, contrary to, *inter alia*, the ARDC's November 2009 ineligibility determination, D.G. *needed* special education. The district court focused on: D.G.'s persistent academic difficulties; FBISD's not "evaluat[ing] whether D.G.'s conduct at SDGC was related to an underlying disability"; and FBISD's not suggesting IDEA special education to B.G. or providing her information about IDEA. Merits Order at *2–5.

But, the district court also noted: D.G. had experienced personal losses in the months preceding his ninth-grade year; D.G.'s previous school had "reported that D.G.'s behavioral problems were not due to any mental or physical health condition, but rather that D.G. was cynical, unwilling to accept responsibility, and was reinforced in this behavior by a parent going through a divorce"; the psychologist who evaluated D.G. for the FIE testified that "most of D.G.'s behavioral problems indicated 'oppositional behavior'"; D.G.'s school counselor testified "family stressors" had contributed to his behavioral problems; and his counselor and teachers testified he was performing well, behaviorally and academically, in fall 2009, his tenth-grade year (although the court accorded that testimony little credence). *Id.* Furthermore, as noted, the district court did *not* conclude that D.G. *needed* special education, but only that FBISD violated the Child Find provision by not timely evaluating him. *Id.* at *7–8.

In the light of the record, including the administrative record provided to the district court, we hold that FBISD and the special-education hearing officer were correct in concluding that D.G. did not, prior to his tenth-grade rheumatoid-arthritis di-

agnosis in November 2009, need special education. Before then, FBISD sought to accommodate D.G.'s disability with Section 504 classroom accommodations, while coping with his "oppositional" behavior by counseling and discipline.

Again, once notified in November of D.G.'s ninth-grade year of his fifth-grade ADHD diagnosis, FBISD requested additional information from B.G. in early December and scheduled a "student assistance team" meeting for early January, after the holidays. FBISD then received an additional psychological evaluation from B.G. and implemented Section 504 accommodations by the end of January. FBISD first became aware of B.G.'s desire to have D.G. evaluated for special education under IDEA in late April 2009, near the end of D.G.'s ninth-grade year, when B.G., represented by counsel, requested a state due-process hearing. FBISD then offered to evaluate D.G. for IDEA eligibility but was denied permission to do so until August 2009, D.G.'s tenth-grade year. Once that evaluation was completed, D.G.'s IDEA eligibility determination was delayed at B.G.'s request, and FBISD's offer of accommodations in addition to those already being provided under Section 504 was rebuffed by B.G. Finally, when D.G. eventually was determined eligible under IDEA for special education in January of his tenth-grade year, it was on a different basis—his recently diagnosed and worsening rheumatoid arthritis.

Concerning some of the district court's factual findings, and pursuant to the well-known standard for whether a finding is clearly erroneous, we are left with the "definite and firm conviction that a mistake has been made". *Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 611 (5th Cir.2006) (internal quotation marks omitted). First, the court found that D.G. was diagnosed with ADHD during fall of the ninth grade (2008), while at SDGC. Merits Order at *2. That is clearly erroneous. D.G. was diagnosed with ADHD during the fifth grade and, thereafter, as the district court found, was "academically and behaviorally successful" until the ninth grade. *Id.* at *1 (internal quotation marks omitted). Second, the court found "[t]he first [ARDC] meeting did not occur until November 2009, and then only after B.G. requested such a meeting". *Id.* at *8. As noted, FBISD offered to evaluate D.G. for IDEA eligibility in early May 2009 (D.G.'s ninth-grade year) but was not granted B.G.'s requisite consent until that August (D.G.'s tenth-grade year). Further, following completion of that evaluation, B.G. requested that the ARDC meeting be delayed.

Those clearly-erroneous findings may have contributed to the district court's concluding FBISD had not timely evaluated D.G. In any event, IDEA does not penalize school districts for not timely evaluating students who do not *need* special education. 20 U.S.C. §§ 1401(3)(A), 1412(a)(3)(A) (Child Find); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009) (noting Child Find requires States to identify and evaluate children with disabilities "to ensure that they receive *needed* special-education services" (emphasis added)); *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 812 (5th Cir.2003) ("[P]rocedural defects alone do not constitute a violation of the right to a [free appropriate public education] unless they result in the loss of an educational opportunity". (internal quotation marks omitted)). Because D.G. was not "eligible for IDEA's benefits" during the ninth grade—the 2008–09 school year—he may not recover for FBISD's not evaluating him at that time. *A.D.*, 503 F.3d at 382.

### B.

■ The district court, in its discretion, may award reasonable attorney's fees "to a

prevailing party who is the parent of a child with a disability". 20 U.S.C. § 1415(i)(3)(B)(i)(I). "[T]o achieve prevailing-party status, a party must attain both: a remedy that alters the legal relationship between the parties and fosters IDEA's purposes; and some judicial imprimatur on a material alteration of the legal relationship". *Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 207 (5th Cir.2011) (internal quotation marks omitted). Prevailing-party status is reviewed *de novo*. *E.g., El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422–23 (5th Cir.2009). Our having held FBISD did not violate IDEA, B.G. is not a requisite prevailing party. Therefore, she may not recover attorney's fees.

### III.

For the foregoing reasons, the judgment is VACATED and judgment is rendered for FBISD.