**REVISED July 31, 2017**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20673
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2017

Lyle W. Cayce
Clerk

D. L., by and through his next friends, J.L. and A.L.,

     Plaintiff - Appellant

v.

CLEAR CREEK INDEPENDENT SCHOOL DISTRICT,

     Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-1373

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

    D.L. appeals the district court's grant of summary judgment on his Individuals with Disabilities Education Act (IDEA) claims against Clear Creek Independent School District. D.L.'s failure to allege in his administrative complaint that the District violated the IDEA's Child Find provision by not identifying him as disabled after April 2013 forfeits that issue. And because

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20673

D.L. does not show he needed special education services in April 2013, the District was not required to provide such services. We AFFIRM.

I.

The magistrate judge's memorandum and recommendation comprehensively recounts D.L.'s experience as a high school student in the District. *D.L. v. Clear Creek Indep. Sch. Dist.*, 2016 WL 4704919 (S.D. Tex. Aug. 16, 2016), *report and recommendation adopted sub nom. L. v. Clear Creek Indep. Sch. Dist.*, 2016 WL 4702446 (S.D. Tex. Sept. 7, 2016). We recite only those facts necessary to the disposition of this appeal.

D.L. has been diagnosed with various physical and mental ailments.[1] Pertinently, D.L. has at one point or another been found to suffer from pervasive developmental disorder not otherwise specified, depression, attention deficit/hyperactivity disorder, and anxiety.

The effect of those ailments on D.L.'s freshman year in high school—2010 to 2011—made him eligible for special education services. The District recognized as much, finding him disabled under the emotional disturbance category. That determination was based on D.L.'s expressing clinically significant levels of anxiety and depression, teacher information indicating the same, his expressing suicidal ideation, his grades beginning to drop, and his difficulties with interpersonal relationships. The District made the disability finding despite D.L. having performed well on recent state tests and making good grades in all but Spanish, which he did not pass. The special education services afforded to D.L. included, among other things, time accommodations, progress monitoring, and psychological counseling.

---

[1] D.L.'s ailments include: Ehlers-Danlos Syndrome, pneumomediastinum, Dysautonomia Postural Orthostatic Tachycardia Syndrome, pilonidal disease, spinal kyphosis, irritable bowel syndrome, night-time enuresis, heart murmur, mitral valve prolapse, pervasive developmental disorder not otherwise specified (PDD–NOS), depression, attention deficit/hyperactivity disorder (ADHD), obsessive-compulsive disorder, and anxiety.

No. 16-20673

These services were discontinued in April 2012—sophomore year—based on the District's determination that D.L. was no longer eligible for such services. The District found that D.L. did not continue to meet the disability criteria for emotional disturbance. That finding took account of D.L.'s 2011 full individual evaluation, teacher commendations regarding his behavior in class and toward peers, his academic performance, his lack of absences, and his assessment that his anxiety and depression were under control.

Disagreeing with the District's determination, D.L.'s father requested an independent evaluation. That did not occur, however, until March 2013. D.L. accordingly went through junior year without any special education services. Despite this, D.L. earned As in all of his classes, was rarely tardy or absent, and scored average on his college entrance exams. D.L.'s teachers further praised his comportment and academics.

This led the District to determine in April 2013 that D.L. remained ineligible for special education services. The District acknowledged that the independent evaluator found D.L. disabled under the emotional disturbance category. But it noted that in addition to being disabled, D.L. must have an educational need to receive special education services. Based on D.L.'s experience junior year, alongside his two prior evaluations, the District decided D.L. had no such need. It further found that D.L.'s father's concerns about possible future deterioration could be addressed through communication between school and home, a team that would monitor D.L.'s progress, and D.L.'s taking advantage of general services.

D.L. maintained his progress during the first semester of his senior year, albeit with extensive one-off accommodations in response to requests by his father. D.L.'s father repeatedly sent emails to teachers recounting D.L.'s misbehavior at home, his reactions to recent diagnoses, his feeling overwhelmed by mounting work, and his desire to not continue in school.

3

No. 16-20673

D.L.'s teachers were responsive to these concerns, making accommodations as necessary. The teachers' observations of D.L. stood in stark contrast to the father's reporting. They stated that he was doing great in class and that his peers looked to him for help.

Second semester of senior year began with D.L. consistently being absent from most classes. This caused the District to contact D.L.'s father. D.L.'s father responded that D.L. decided he was not returning to school as he was overwhelmed by the workload. Efforts to accommodate D.L.—such as late-start schedules and online courses—were unavailing. D.L.'s truancy continued throughout the semester.

Feeling that the District was being unresponsive to D.L.'s needs, D.L.'s father requested a due process hearing challenging the April 2013 determination that special education was not warranted. The complaint alleges the District was repeatedly apprised of D.L.'s disabilities and knew of their potential impact on D.L.'s education. It further contends that the District's failure to accommodate D.L. caused his problems during senior year.[2]

After a three-day hearing, the hearing officer concluded that D.L. did not suffer from a disability enumerated in the IDEA, that D.L. did not need special educational services, and that the District complied with its Child Find obligations in April 2013. It expressly found, moreover, that the complaint did not allege the District should have, but failed to, refer D.L. for special education services during senior year. That issue was accordingly not properly before the hearing officer.

---

[2] After filing the administrative complaint, D.L.'s father had D.L. evaluated by Peter Simione, Ph.D. Simione, like the April 2013 outside evaluator, reports that D.L. struggles with depression and anxiety and would benefit from individualized educational programming. As the magistrate judge observed, however, nothing in that evaluation, which was not available to the District in April 2013, contradicts the District's determination.

4

No. 16-20673

D.L. sought review in the district court. The magistrate judge recommended that summary judgment be granted in favor of the District. She concluded the District's April 2013 determination complied with the IDEA requirements, agreed that D.L.'s senior year Child Find allegation was not properly before the hearing officer, and held that the claim was without merit in any event. The district court adopted that recommendation and granted summary judgment.

## II.

The IDEA imposes a duty on school districts to identify, locate, and evaluate children with disabilities who are in need of special education. 20 U.S.C. § 1412(a)(3)(A); *Forest Grove Sch. Dist. v. T.A.,* 557 U.S. 230, 245 (2009). D.L. argues that the District violated this "Child Find" provision by not identifying him as disabled during his senior year. This allegation does not appear in D.L.'s administrative complaint. Nor was it pressed during prehearing conferences. Indeed, the parties clarified in one such meeting that the Child Find allegation the complaint does contain relates only to the determination made during D.L.'s junior year. It was not until closing arguments at the due process hearing that D.L. raised the issue with respect to his senior year. These shortcomings led the hearing officer to not consider the issue and the district court to find the issue forfeited. We agree. The IDEA prohibits a party requesting a due process hearing from "rais[ing] issues at the due process hearing that were not raised in the [administrative complaint], unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B); 34 C.F.R. § 300.511(d).

## III.

We turn now to D.L.'s preserved claim that the District violated the IDEA by not providing him special education services during his junior year. To be eligible for such services a student must (1) have a qualifying disability

and (2) by reason thereof need special education and related services. *Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 382 (5th Cir. 2007). The district court reviews a hearing officer's decision virtually de novo. *Id.* at 381. The officer's findings are accorded due weight, but the district court must arrive at an independent conclusion based on a preponderance of the evidence. *Id.* We review the district court's legal conclusions de novo and underlying factual findings for clear error.[3] *Id.*

D.L. first contends the District erred by overlooking the outside evaluator's opinions about his disability. To the contrary, the District expressly took account of the evaluator's report and in fact credited its finding that D.L. may still be disabled under the emotional disturbance category. That the District chose not to adopt its recommendations for accommodations does not amount to error. For starters, the report defers to the District on whether D.L. needs special education services. Next, there is no presumption in favor of outside evaluators. *See Christopher M. ex rel. Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1292 (5th Cir. 1991) (declining to "create any presumption in favor of the testimony of the child's treating physician"); *A.D.,* 503 F.3d at 384 (valuing teacher testimony over that of doctors). Finally, we have recognized that teacher observations—like those on which the District relied stating that D.L.'s disability was not affecting his academics or behavior—are especially instructive as they spend more time with students than do outside evaluators. *See Christopher M.*, 933 F.2d at 1292 (highlighting that school personnel often have greater contact with disabled children than doctors); *A.D.,* 503 F.3d at 384 (agreeing with the argument that because

---

[3] This is so notwithstanding the district court's resolution of the case at summary judgment. *Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 381–82 (5th Cir. 2007); *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000).

teacher testimony is based on first hand observations of educational progress, it may be more reliable than physician testimony).

D.L. next asserts that these considerations, even if generally proper, ought not apply because D.L.'s disability is undetectable to the untrained eye. This, argues D.L., makes teacher observations not particularly instructive in his case. Both the record and our case law belie this claim. First off, D.L.'s teachers were able to recognize that D.L.'s condition affected his education during freshman year. Indeed, their observations to that effect were a factor in the District finding D.L. needed special education services at that point. Second, D.L. has pointed us to no case, and we have found none, holding that D.L.'s ailments are so undetectable that teacher observations would be unreliable. Rather, cases involving students with similar disabilities repeatedly look to teacher observations in deciding whether special education services were necessary. *See A.D.*, 503 F.3d at 384 (citing teacher testimony in concluding that student with ADHD did not need special education services); *J.D. ex rel J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 67–68 (2d Cir. 2000) (relying on teachers' comments in deciding student with emotional disturbance was ineligible for special education).

D.L. next alleges that the District erred in relying exclusively on academic performance. Again, the record does not support this contention. The District also considered D.L.'s 2011 and 2012 full individual evaluations, his March 2013 outside evaluation, and his teacher's observations of his comportment and interpersonal relationships. This was proper. *A.D.,* 503 F.3d at 384 (noting that in determining whether a child needs special education, the school district should consider a student's academic, behavioral, and social progress). D.L.'s grades, moreover, are a consideration in determining whether special education services are necessary. *Cf. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 n. 28 (1982) ("[T]he achievement

of passing marks and advancement from grade to grade will be one important factor in determining educational benefit.").

D.L. last argues that the District should have looked not only to his present need but also to the possible future consequences of his disability. To that end, D.L. details his difficult senior year, blaming the District's failure to intervene for his shortcomings. But we do not judge a school district's determination in hindsight. Rather, we consider whether there was a present need for special education services. *See Marshall Joint Sch. Dist. No. 2 v. C.D. ex. rel. Brian D.*, 616 F.3d 632, 637 (7th Cir. 2010) (noting that "[i]t is not whether something, when considered in the abstract *can* adversely affect a student's education performance, but whether in reality it *does*"). A fear that a student may experience problems in the future is not by itself a valid basis for IDEA eligibility. *See Eric H. ex rel. Gary H. v. Judson Indep. Sch. Dist.*, 2002 WL 31396140, at \*2 (W.D. Tex. Sept. 30, 2002) (stating that "fear alone . . . cannot form the basis for insisting that the district provide any sort of 'preventative' special education services" and noting that "the child must demonstrate a *present* need for special education services"). In April 2013, D.L. was excelling academically and was commended by his teachers for his comportment. This, alongside the other evidence available at the time, caused the District to conclude that D.L.'s present needs did not warrant special education. That D.L. subsequently spiraled does not undermine that earlier determination. That is especially so given that D.L. does not point to any information the District should have, but did not, consider that indicated D.L.'s success was likely to be short lived.

\*     \*     \*

The judgment of the district court is AFFIRMED.